Bradley Abiud PEREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–07–00030–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 24, 2008.

Rehearing Overruled Aug. 7, 2008.

Bradley Abiud Perez, Humble, TX, pro se.

Kristen Moore, Richmond, TX, for The State.

Panel consists of Chief Justice HEDGES and Justices FOWLER and BOYCE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Bradley Abiud Perez, was indicted on the offense of injury to a child. After a bench trial, the trial court found him guilty and assessed punishment at ten years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine, but probated the sentence for ten years. Appellant thereafter filed a motion to proceed in forma pauperis, and requested that the trial court provide him with a free reporter's record on appeal. The trial court denied his motion, and appellant failed to pay or otherwise make arrangements to pay for a reporter's record to be filed with this Court. Thus, this appeal presents itself to us with only a clerk's record.[1] None of the proceedings at the bench trial are before us. In seven issues, appellant challenges various aspects of his conviction. We affirm.

### Factual and Procedural Background

After a bench trial, appellant was convicted of the offense of injury to a child. He was sentenced to ten years' confinement in the Texas Department of Criminal Justice, Institutional Division, probated, and a $10,000 fine. Appellant timely filed his notice of appeal.

Thereafter, appellant filed a "Motion to Continue to Proceed In Forma Pauperis," in which he requested that the trial court provide him with a free reporter's record on appeal. After conducting two evidentiary hearings to determine whether appellant was indigent, the trial court denied

---

1. The transcripts of three postconviction hearings have been filed with this Court. The first hearing was conducted to determine the amount of appellant's appeal bond, while the second and third hearings were conducted to determine appellant's indigency.

appellant's motion, and issued findings of fact and conclusions of law. Among them, the trial court found that (1) appellant "failed to exercise reasonable efforts to convert any of his own assets to cash"; (2) appellant "failed to make any reasonable efforts to acquire the funds necessary to purchase the reporter's record"; (3) appellant's testimony concerning his claims of indigency were "unsupported by the evidence and contradictory, at best"; and (4) appellant "failed to bring forth satisfactory evidence that he is indigent," and his testimony only established that it would be an "inconvenience to him and to his wife were he to be required to pay for the Reporter's Record." The trial court concluded, among other things, that "[a]ppellant is not indigent and therefore has no right to a free Reporter's Record." Appellant then appealed the trial court's denial of his motion.

On August 2, 2007, by written order we denied appellant's motion for a free reporter's record. We further directed appellant to pay for preparation of the reporter's record from trial, and notified appellant that the reporter's record was due by September 4, 2007. Appellant failed to pay or arrange to pay for the reporter's record. On September 12, 2007, the clerk of this Court notified appellant that no reporter's record had yet been filed and that he had fifteen days to file a reporter's record. We also requested appellant to advise the Court if he had not made arrangements to pay for the reporter's record. Again, appellant failed to pay or make arrangements to pay for the reporter's record, or to advise us of his failure to do so.

Finally, on October 3, 2007, the clerk of this Court notified appellant of the court reporter's statement that appellant had not yet arranged to pay for the reporter's record. The clerk further notified appellant that the Court would consider and decide those issues that do not require a reporter's record unless appellant—within fifteen days of notice—paid or made arrangements to pay for the reporter's record, and provided the Court with proof of payment. Appellant filed no reply. As of the date of this opinion, no reporter's record of appellant's trial on the merits has been filed with this Court.

### Issues on Appeal

■ In seven issues,[2] appellant challenges his conviction for injury to a child. In his second issue, appellant complains that he was denied due process of law because the trial judge was not impartial. In his third issue, appellant asserts that the amount of pretrial bail set by the trial court was used as an instrument of oppression, and that it interfered with his ability

---

2. In his brief, appellant purportedly challenges his conviction in twelve issues. Because appellant is representing himself in this appeal, we have given him considerable latitude in the consideration of what he has presented as issues for our review. *See Barnes v. State*, 832 S.W.2d 424, 426 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (explaining that the court of appeals reviews pro se pleadings "with patience and liberality"). However, we hold a pro se appellant to the same standards as a licensed attorney, and require them to comply with applicable laws and rules of procedure. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex.1978); *Kindley v. State*, 879 S.W.2d 261, 264 (Tex.App.-Hous-ton [14th Dist.] 1994, no pet.). Although we construe the briefing rules liberally, *see* Tex. R.App. P. 38.9, appellant's brief fails to provide any argument supported by references to the appellate record regarding the first issue stated in his brief: "Did the trial court transgress upon Mr. Perez [sic] due process of law right when it subjected him to an unnecessary trial?" Accordingly, appellant's brief fails to sufficiently raise this issue on appeal, and it is overruled. *See* Tex.R.App. P. 38.1(h). Furthermore, because we lack a reporter's record, we will consider appellant's five issues regarding alleged evidentiary errors committed by the trial judge in a single issue.

to conduct his defense at trial. In his fourth issue, appellant argues that he was denied his Sixth Amendment right to the effective assistance of counsel because the trial court (1) appointed attorneys to represent him that, in his words, "refus[ed] to provide effective assistance of counsel," and were otherwise unfamiliar with the case; (2) refused to appoint him counsel of his choice; and (3) forced him to proceed without an attorney who was willing to defend him. In his fifth issue, appellant contends that section 22.04 of the Texas Penal Code is unconstitutionally vague, and that the indictment is void because it fails to give him adequate notice of the conduct that is forbidden and that which is permitted. In his sixth issue, appellant asserts that his parental rights were already terminated in a prior action brought by the State of Texas, and argues that his criminal trial therefore constitutes a double jeopardy violation. In his eighth issue, appellant argues that the trial court erred in denying his motion for new trial based on newly discovered evidence that the grand jury that returned his indictment was not lawfully impaneled and did not operate independently. In his seventh, ninth, tenth, eleventh, and twelfth issues, appellant complains of the trial court's admission of several pieces of evidence.

## Analysis of Appellant's Issues

### I. We will consider those issues that do not require a reporter's record.

■ An appellant has the burden to properly initiate the completion of a record sufficient to illustrate reversible error. *See* Tex.R.App. P. 35.3; *see also Cheek v. State*, 65 S.W.3d 728, 730 (Tex.App.-Waco 2001, no pet.); *Kent v. State*, 982 S.W.2d

639, 641 (Tex.App.-Amarillo 1998, pet. ref'd, untimely filed). If the appellant fails to do so, and an issue on appeal involves matters omitted from the record due to the appellant's failure to request or pay for the record, then the appellant's actions will prevent us from adequately addressing the dispute. *Kent*, 982 S.W.2d at 641. This effectively waives any complaint on these issues. *Id.* We may, however, consider and decide those issues that do not require a reporter's record for a decision. *See* Tex.R.App. P. 37.3(c).

### A. Appellant has waived his complaint on the issue of whether the trial judge was not impartial.

■ In his second issue, appellant contends that he was denied due process of law because the trial judge was not impartial.[3] He suggests that, because the trial judge denied his pretrial motions—all of which he alleges were unopposed by the State—the trial judge failed "to maintain an attitude of impartiality throughout the proceedings." While we agree with appellant that he has a due process right to an impartial tribunal, *see* U.S. Const. Amend. V, VI; Tex. Const. art. I, §§ 10, 19; *Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App.2006), we conclude that appellant has waived his complaint on this issue.

The clerk's record reveals that appellant filed over sixty-five pretrial motions and other written requests and objections with the trial court. However, in his brief, appellant fails to specify the pretrial motions to which he refers. Although the clerk's record contains copies of several of appellant's pretrial motions with the trial judge's handwritten rulings, we note that

---

**3.** In his brief, appellant states this issue using the following language: "Did the trial court err when it concluded that Mr. Perez was guilty of the offense charged because the trial court believed he was guilty?" As noted

above, we have granted appellant some liberality in our review of his brief. We construe the language used by appellant as a challenge to the trial judge's impartiality, and we address this issue accordingly.

several of appellant's motions were either granted by the trial judge or withdrawn by appellant. And, with respect to those pretrial motions not bearing the trial judge's handwritten ruling, from the state of the record we cannot determine which of these other motions were denied, much less which of these other motions were even considered by the trial judge.

■ Furthermore, even assuming that the trial judge considered and denied appellant's pretrial motions, and further assuming that these motions were unopposed by the State, appellant has failed to cite any authority for the proposition that a defendant's due process rights are violated when the trial judge denies the defendant's unopposed pretrial motions. Conclusory arguments that cite no authority present nothing for our review. *See Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App. 1992); *Atkins v. State,* 919 S.W.2d 770, 774–75 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

Thus, appellant, having failed to support his argument on this issue with either references to the appellate record or appropriate citations to legal authority, has waived his complaint on this issue. *See* TEX.R.APP. P. 38.1(h); *see also Vuong,* 830 S.W.2d at 940; *Atkins,* 919 S.W.2d at 774–75. We overrule appellant's second issue.

**B. Appellant's complaint regarding the excessiveness of his pretrial bail is moot, and appellant has waived his complaint on the issue of whether the amount of pretrial bail interfered with his ability to conduct his defense at trial.**

■ In his third issue, appellant contends that the amount of pretrial bail set by the trial court was used as an instrument of oppression, and that it interfered with his ability to conduct his defense at trial. Appellant asserts that his pretrial bail was set at $75,000, and argues that, because he was released on a personal recognizance bond after his conviction, pretrial bail "was impermissibly used as a means to punish him before trial" and "to interfere with, and impede, his right to conduct his defense in propia persona." We examine each of these arguments separately.

With respect to the appellant's complaint regarding the excessiveness of pretrial bail, we conclude that this issue is moot. As noted above, appellant was convicted of the offense of injury to a child. In addition, he has been released on a personal recognizance bond pending the outcome of his appeal. Because appellant has been convicted of the underlying offense, and because he is no longer in custody pending bail, his complaint regarding the excessiveness of pretrial bail is moot. *See Oldham v. State,* 5 S.W.3d 840, 846 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) ("Issues concerning pretrial bail are moot after the accused is convicted."); *see also Borrego v. State,* No. 07–99–0139–CR, 2000 WL 1346651, at *1 (Tex.App.-Amarillo Sept.19, 2000, no pet.) (concluding that, in an appeal of a habeas corpus proceeding, issues concerning pretrial bail were moot because the appellant was no longer in custody pending bail).

■ And, appellant has waived his complaint that pretrial bail interfered and impeded his right to conduct his defense at trial because we have no reporter's record to review. Appellant has the burden to present us with a record sufficient to demonstrate reversible error. *See Cheek,* 65 S.W.3d at 730; *Kent,* 982 S.W.2d at 641. Without a reporter's record, we cannot determine whether and to what extent appellant was unable to conduct his defense because he could not post his allegedly excessive bail and therefore was in custody during trial. Because we have no reporter's record, we cannot determine whether appellant was harmed by this alleged er-

ror, and he has therefore waived his complaint on this issue. *See Cheek,* 65 S.W.3d at 730; *Kent,* 982 S.W.2d at 641. We overrule appellant's third issue.

**C. Appellant was not denied his Sixth Amendment right to the effective assistance of counsel.**

In his fourth issue, appellant argues that he was denied his Sixth Amendment right to the effective assistance of counsel because the trial court (1) appointed attorneys to represent him that, in his words, "refus[ed] to provide effective assistance of counsel," and were otherwise unfamiliar with the case; (2) refused to appoint him counsel of his choice; and (3) forced him to proceed without an attorney who was willing to defend him. While appellant is correct that an indigent defendant has a Sixth Amendment right to the appointment of counsel in criminal prosecutions, and that this right entails the right to have the effective assistance of counsel at trial, we disagree with appellant that he was denied this right by the trial court.

■■■ The Sixth Amendment encompasses both the right to have counsel appointed to represent an indigent defendant at a criminal trial, and the reciprocal right to self-representation. *Williams v. State,* 252 S.W.3d 353, 355–56 (Tex.Crim.App. 2008). However, an accused does not have the right to choose appointed counsel, and unless he waives the right to counsel and chooses to represent himself, or shows adequate reasons for the appointment of new counsel, he must accept court-appointed counsel. *Burks v. State,* 792 S.W.2d 835, 838 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd) (citing *Thomas v. State,* 550 S.W.2d 64 (Tex.Crim.App.1977); *Aguilar v. State,* 651 S.W.2d 822, 823 (Tex.App.-Houston [1st Dist.] 1983, no pet.)). Furthermore, when a convicted defendant has insisted upon self-representation, any subsequent claim of ineffective assistance of counsel is not to be considered. *See Far-*

*etta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

With respect to appellant's claim that his Sixth Amendment rights were violated, the clerk's record reveals that the following events occurred:

● Upon appellant's request for appointed counsel, the trial court appointed attorney Craig Hughes to represent appellant at trial.

● Approximately two months later, appellant filed a "Motion Rejecting The Appointment of Counsel," wherein he stated that he was "aware of the dangers and disadvantages of self-representation" and "knowingly and intelligently assert[ed] the right to self-representation." Apparently, the trial court never ruled on this motion.

● Appellant later filed a "Motion For The Court Not To Obstruct, Impede, Or Implicitly Deny His Right To Proceed Pro Se," in which he complained of attorney Hughes's qualifications to defend him at trial, and requested that the court not interfere with his right to proceed pro se at trial.

● Appellant subsequently filed a "Verified Motion Terminating The Services of Craig Hughes," in which he "reject[ed] the appointment of counsel" and requested the court not to "impede, obstruct, or implicitly deny his right to proceed pro se."

● Approximately one month later, attorney Hughes filed a motion to withdraw as counsel, in which he asserted that appellant had "clearly, unequivocally, and consistently asserted his right to self-representation."

● The trial court conducted a hearing on appellant's and attorney Hughes's motions, found that appellant was competent to represent himself at trial, and ordered (1) appellant be allowed to proceed pro se at trial on the merits;

and (2) attorney Hughes to serve as appellant's standby counsel for the duration of the trial.

● Appellant later filed a "Verified Motion For An Order Appointing A New Co–Counsel," in which he complained that attorney Hughes had failed to communicate with either him or expert witnesses, and sought the appointment of new co-counsel to coordinate a new trial date.

● Attorney Hughes later filed a motion to withdraw as standby counsel, in which he asserted that he was "unable to effectively communicate with [appellant] so as to be able to adequately represent [him]," and that appellant desired to represent himself at trial.

● The trial court granted attorney Hughes's motion to withdraw, and appointed attorney Cary Faden to replace attorney Hughes as appellant's standby counsel.

● The trial judge then directed a letter to appellant and to attorney Faden, in which he explained that attorney Hughes's motion to withdraw had been granted, attorney Faden had been appointed as appellant's new standby counsel, and reiterated that appellant would be defending himself pro se and that attorney Faden's function would be to assist appellant in any matters he needed help on in preparing for trial.

● Appellant subsequently filed a "Verified Motion Terminating The Services Of Co–Counsel Cary M. Faden," in which he states that he "has decided to appear without counsel," that "he must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial," and in which he requests the court to immediately terminate attorney Faden's services. The clerk's record does not indicate whether the trial court ever ruled on this motion.

■ From these motions and letters, it is evident that the trial court did not deny appellant's Sixth Amendment right to the effective assistance of counsel. As a preliminary matter, the record does not support appellant's contention that the trial court forced him "to proceed without an attorney who was willing to defend him." From the outset of the criminal proceedings, appellant sought to avail himself of his Sixth Amendment right to represent himself at trial. He represented to the trial court that he was "aware of the dangers and disadvantages of self-representation," and "knowingly and intelligently assert[ed] the right to self-representation." To this end, the trial court complied with appellant's repeated requests, and after conducting a hearing on appellant's motions to represent himself at trial, ordered that appellant be allowed to proceed pro se at his trial on the merits, and that his appointed attorney serve only as standby counsel. In this context, appellant's complaint that the trial court forced him to proceed without an attorney who was willing to defend him is without merit.

■ Similarly, the record does not support appellant's assertion that the trial court refused to appoint him counsel of his choice. To the contrary, the trial court actually complied with appellant's requests to terminate the services of attorney Hughes. While the trial court did not terminate the services of attorney Faden— as appellant requested—we have already explained that an indigent defendant is not entitled to the appointment of counsel of his choice. *See Burks*, 792 S.W.2d at 838. Unless he shows adequate reasons for the appointment of new counsel, he must accept court-appointed counsel. *See id.* However, without a reporter's record we

are unable to determine whether appellant made the requisite showing to have new standby counsel appointed to assist appellant at trial, and whether the trial court erred in failing to terminate the services of attorney Faden. Again, appellant's failure to file a reporter's record prevents us from determining whether he was harmed during trial by this alleged error, and he has therefore waived his complaint on this issue. *See Cheek,* 65 S.W.3d at 730; *Kent,* 982 S.W.2d at 641.

Finally, with respect to appellant's contention that the attorneys appointed by the trial court "refus[ed] to provide effective assistance of counsel," and were otherwise unfamiliar with the case, appellant's claims are without merit. As noted above, once a convicted defendant has insisted upon self-representation, any subsequent claim of ineffective assistance of counsel is not to be considered. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525. Therefore, we will only consider the appellate record up to the point where appellant's self-representation began. *See id.; see also Rodriguez v. State,* 763 S.W.2d 893, 896 (Tex.App.-San Antonio 1988, pet. ref'd). However, without a reporter's record we are unable to determine whether attorney Hughes provided ineffective assistance of counsel before the trial court ordered him to serve as standby counsel. *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005) (stating that allegations of ineffective assistance of counsel "'must be firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim") (internal citations and quotations omitted). As above, appellant has waived his complaint on this issue. *See Cheek,* 65 S.W.3d at 730; *Kent,* 982 S.W.2d at 641. We therefore overrule appellant's fourth issue.

**D. Section 22.04 of the Texas Penal Code is not unconstitutionally vague, and the indictment provided constitutionally adequate notice to appellant.**

In his fifth issue, appellant contends that section 22.04 of the Texas Penal Code is unconstitutionally vague, and that the indictment is void because it fails to give him adequate notice of the conduct that is forbidden and that which is permitted, as required by the Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas Constitution. Specifically, he asserts that the Texas Penal Code does not identify the "'number and intensity of oscillations' which constitute 'shaking' or 'shaken baby syndrome,'" nor does it "define 'the number and intensity' of oscillations which are required to cause 'forceful trauma.'" Appellant further asserts that the indictment, as written, does not sufficiently inform him of the charge against him to allow him to prepare an adequate defense at trial. We disagree with appellant that section 22.04 of the Penal Code is unconstitutionally vague, and that the indictment does not sufficiently inform him of the charge against him.

**1. The statute is not unconstitutionally vague.**

Appellant was indicted under section 22.04 of the Texas Penal Code. That provision makes it an offense if a person intentionally, knowingly, recklessly, or with criminal negligence causes serious bodily injury to a child under fourteen years of age. *See* Tex. Pen.Code § 22.04(a)(1), (c)(1). The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(46). However, the Penal Code does allow a parent or stepparent to use force against a child to discipline the child or to safeguard or promote the child's welfare. *See id.* § 9.61(a). But, the parent or stepparent

must reasonably believe that the force used against the child must be necessary to accomplish those ends. *See id.*

Both the Court of Criminal Appeals and this Court have held that former versions of section 22.04 were not unconstitutionally vague. *See Phillips v. State,* 588 S.W.2d 378, 380–81 (Tex.Crim.App.1979) (interpreting former version of section 22.04 that stated offense as "intentionally, knowingly, recklessly, or with criminal negligence engag[ing] in conduct that causes serious bodily injury ... to a child who is 14 years of age or younger"); *Nabors v. State,* 508 S.W.2d 650, 651–52 (Tex.Crim. App.1974) (interpreting predecessor statute to section 22.04, which stated offense as "intentionally maim[ing], disfigur[ing], or batter[ing] a child who is 14 years of age or younger or engag[ing] in conduct which by omission or commission is intended to cause physical injury to, or deformity or deficiency in, a child who is 14 years of age or younger"); *Teubner v. State,* 742 S.W.2d 57, 58–59 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd) (interpreting former version of section 22.04 that stated offense as "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, recklessly by omission, engag[ing] in conduct that causes to a child [who is 14 years of age or younger] ... serious bodily injury"). Because the current version of section 22.04 does not vary materially from the prior versions of section 22.04 in terms of the elements of the offense, we hold that the current version of section 22.04 is not unconstitutionally vague.

**2. The indictment provided constitutionally adequate notice to appellant.**

■■■■ A criminal defendant has a right to notice under the United States and Texas Constitutions. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Lawrence v. State,* 240 S.W.3d 912, 916 (Tex.Crim.App.2007). To satisfy this notice requirement, an indictment must be "specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App. 2004). An indictment is generally sufficient so long as it tracks the language of a penal statute that itself satisfies the constitutional requirement of notice. *Lawrence,* 240 S.W.3d at 916 (citing *State v. Mays,* 967 S.W.2d 404, 406 (Tex.Crim.App.1998)).

Appellant's indictment sufficiently tracks the language of section 22.04 of the Texas Penal Code. In this case, the indictment alleged that appellant

[D]id then and there intentionally and knowingly cause serious bodily injury to [the Complainant] ... by shaking the Complainant with the Defendant's hands, a deadly weapon, and did, intentionally and knowingly cause serious bodily injury to [the Complainant] ... by causing forceful trauma to the Complainant's head in a manner and means unknown to the Grand Jury, and during the course of the offense the Defendant did use a deadly weapon, the nature and description of which is unknown to the Grand Jury....

Appellant's indictment tracks the language of Texas Penal Code section 22.04, which states an offense under the laws of the State of Texas. It informed appellant that he was being charged with (1) intentionally and knowingly (2) causing serious bodily injury (3) to the complainant (4) by shaking the complainant with appellant's hands, and with (5) causing forceful trauma to the complainant's head (6) in an unknown manner and means (7) while using a deadly weapon. Here, the indictment sufficiently informed appellant of the nature of the accusations against him to allow him to prepare a defense at trial. *See Moff,* 154 S.W.3d at 601.

Therefore, the indictment provided constitutionally adequate notice to appellant.

*See id.; see also Lawrence,* 240 S.W.3d at 916; *Teubner,* 742 S.W.2d at 58–59. We overrule appellant's fifth issue.

**E. Appellant's criminal trial does not constitute a double jeopardy violation.**

In his sixth issue, appellant asserts that his parental rights were already terminated in a previous action brought by the State of Texas, and argues that his criminal trial therefore constitutes a double jeopardy violation. We disagree.

The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Appellant's issue encompasses the third protection.

Double jeopardy is not violated when the same facts result in civil proceedings—in which a parent's rights are terminated—and criminal proceedings by which a parent is punished for criminal offenses committed. *Ex parte Cantu,* 913 S.W.2d 701, 705–06 (Tex.App.-San Antonio 1995, pet. ref'd); *Malone v. State,* 864 S.W.2d 156, 158 (Tex.App.-Fort Worth 1993, no pet.). When the State seeks custody of children, it pursues a purely remedial—and not punitive—result: the protection of

minors. *See Cantu,* 913 S.W.2d at 705–06. Because the State does not seek to punish the parents or impose retribution in a custody proceeding, lost custody cannot be considered punitive for double jeopardy purposes. *See id.*

We overrule appellant's sixth issue.

**F. The trial court did not err in denying appellant's motion for new trial based on newly discovered evidence.**

In his eighth issue, appellant argues that the trial court erred in denying his motion for new trial based on newly discovered evidence allegedly demonstrating that the grand jury returning his indictment was not lawfully impaneled and did not operate independently.[4] Appellant asserts that, after judgment was entered in his case, a local television station reported that the Fort Bend County District Attorney's Office "arbitrarily indicted individuals in order to do favors for campaign contributors." Appellant argues that the trial court was required to grant his motion for new trial in light of this newly discovered evidence. We disagree.

A motion for new trial must be filed no later than thirty days after the date the trial court imposes sentence, and any amended motion for new trial must be filed within the same thirty-day period and before the trial court rules on the original motion. Tex.R.App. P. 21.4; *see Drew v. State,* 743 S.W.2d 207, 222–23 (Tex.Crim. App.1987). This includes motions for new trial based on newly discovered evidence. *See Drew,* 743 S.W.2d at 222–23. The trial court must rule on a motion for new trial within seventy-five days after imposing

---

4. In his brief, appellant states this issue in the following way: "Did the trial court err when it failed or refused to order the grand jury transcripts released after it was disclosed that the Fort Bend County District Attorney uses indictments in order to grandstand for campaign contributors?" Because appellant filed a "Motion For A New Trial Based On New Evidence"—wherein he references a local television news report discussing alleged impropriety in the Fort Bend County District Attorney's Office—we interpret appellant's issue as one challenging the denial of his motion for new trial based on newly discovered evidence, and address it accordingly.

sentence. Tex.R.App. P. 21.8(a). A motion that is not ruled on by written order within seventy-five days after the date sentence is imposed is deemed denied. Tex.R.App. P. 21.8(c).

 On December 21, 2006, the trial court imposed sentence upon appellant. However, appellant did not file his motion for new trial based on newly discovered evidence until October 31, 2007—314 days after the date his sentence was imposed. Because appellant's motion for new trial based on newly discovered evidence was filed outside the thirty-day window prescribed by Rule 21.4 of the Texas Rules of Appellate Procedure, the motion was untimely and the trial court lacked jurisdiction to consider it. *See Beathard v. State*, 767 S.W.2d 423, 433 (Tex.Crim.App.1989) (en banc) (holding that the trial court lacked jurisdiction to decide an untimely motion for new trial based on newly discovered evidence that was filed over one year after sentence was imposed); *Ex parte Ybarra*, 629 S.W.2d 943, 945 (Tex. Crim.App.1982) (en banc) (stating that the trial court may not grant new trial *sua sponte* in the absence of timely motion for new trial); *Garza v. State*, 904 S.W.2d 877, 878–79 (Tex.App.-Corpus Christi 1995), *aff'd*, 931 S.W.2d 560 (Tex.Crim.App.1996) (concluding that the trial court lost jurisdiction over the case when a timely motion for new trial was overruled by operation of law); *Hamilton v. State*, 804 S.W.2d 171, 174 (Tex.App.-Fort Worth 1991, pet. ref'd) (concluding that an amended motion for new trial filed 118 days after the date sentence was imposed was a nullity and the trial court was without jurisdiction to consider it). We overrule appellant's eighth issue.[5]

## II. Appellant has waived his complaint on alleged evidentiary errors committed by the trial court.

 In his seventh, ninth, tenth, eleventh, and twelfth issues, appellant alleges

---

**5.** Even if we were to construe appellant's issue as a challenge to the trial court's denial of his pretrial motions seeking a determination that the grand jury that returned his indictment was "lawfully impaneled and acted independently"—which we construe as a challenge to the form of the indictment—we would conclude that the trial judge did not abuse his discretion in denying appellant's motion. *See* Tex.Code Crim. Proc. art. 27.09(3) (providing that a complaint that the indictment "was not returned by a lawfully chosen or empaneled grand jury" is a challenge to the form of the indictment); *Caraway v. State*, 911 S.W.2d 400, 401 n. 1 (Tex.App.-Texarkana 1995, no pet.) (same); *see also State v. Flournoy*, 187 S.W.3d 621, 623 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (stating that an appellate court reviews the trial court's ruling on a motion to quash for an abuse of discretion). A defendant challenging an indictment carries the burden of proof in a motion to quash. *Flournoy*, 187 S.W.3d at 623 (citing *Wheat v. State*, 537 S.W.2d 20, 21 (Tex.Crim.App.1976)). In his motion, appellant made no allegations regarding discrimination in the empanelment of the grand jury that returned his indictment, or that it failed to act independently. Nor did he attach any evidence to his motion that would suggest the grand jury was not lawfully impaneled, or that it did not act independently. Therefore, appellant did not establish a prima facie case of discrimination in the impanelment of the grand jury that returned his indictment, and the trial court did not abuse its discretion in denying appellant's motion. *See Castaneda v. Partida*, 430 U.S. 482, 494–95, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (establishing a three-part test for demonstrating an equal protection violation in the selection or impanelment of a grand jury, and discussing the evidence necessary to make the required showing); *see also Garcia v. State*, 919 S.W.2d 370, 393 (Tex.Crim.App.1996) (op. on reh'g) (holding that the appellant failed to satisfy the *Partida* test where he failed to present any evidence of (1) the percentage of Hispanics in the county where he was indicted; (2) the racial composition of the grand jury that indicted him; or (3) the disparity between the percentage of Hispanic residents of that county and the percentage of Hispanic residents summoned for grand jury service).

that the trial court abused its discretion when it failed to (1) exclude the testimony of Valerie Treece, whose name—according to appellant—was not included on the State's witness list nor identified in the State's *Brady* material; (2) suppress the State's "electronic records" and to allow an expert to evaluate those records; (3) direct the State to deliver "*Brady* and Rule 404(b) material" [6] to appellant or his designees; (4) conduct a *Daubert* hearing [7]; and (5) conduct a *Jackson–Denno* hearing concerning the testimony of appellant's wife. We interpret appellant's allegations as a challenge to the trial court's admission of the following pieces of evidence: (1) the testimony of Valerie Treece; (2) the State's "electronic records"; (3) the State's scientific and medical expert testimony regarding the complainant's injuries; and (4) the testimony of Rebecca Perez, appellant's wife.

However, appellant has waived these complaints because of his failure to arrange for a reporter's record on appeal. As explained above, appellant was notified by the clerk of this Court of the effect of his failure to pay or make arrangements to pay for a reporter's record on appeal. *See* Tex.R.App. P. 37.3(c) (providing that the court of appeals may consider and decide those issues that do not require a reporter's record if (1) the clerk's record has been filed; (2) the appellant failed to pay or make arrangements to pay for a report-

er's record; and (3) the appellant ·is not indigent). Without a reporter's record, we have no way of knowing whether any of the evidence appellant complains of was actually admitted at trial. This, in turn, precludes us from assessing the potential harm caused by the trial court's alleged errors. In sum, by failing to pay or otherwise arrange for a transcription of the trial sufficient to illustrate the trial court's alleged errors, appellant has not only prevented us from considering these alleged errors, but has also waived his complaint as to each. *See Kent,* 982 S.W.2d at 641; *see also Cheek,* 65 S.W.3d at 730. We therefore overrule appellant's seventh, ninth, tenth, eleventh, and twelfth issues.

## Conclusion

Having addressed and overruled each of appellant's issues, we affirm the judgment of the trial court.

---

**6.** In his brief, appellant does not specify the "*Brady* and Rule 404(b) material" to which he refers. However, in other sections of his brief, appellant discusses the trial court's commission of alleged *Brady* and Rule 404(b) violations in the context of its admission of Treece's testimony and the State's "electronic records." Accordingly, we interpret this as a further challenge to the trial court's admission of each of these pieces of evidence.

**7.** In his "Motion For A *Robinson–Daubert* Hearing," appellant fails to identify the particular expert whose testimony he wishes to

challenge. However, in his "Amended Motion For A *Daubert* Hearing," appellant specifically references "proposed medical and scientific evidence" relating to "manual shaking" and "subdural hematomas and retinal hemorrhages," and requests a trial court determination of "[w]hether shaken baby syndrome meets the *Daubert* criteria for admissibility as a scientific theory to explain the [complainant's] injuries." We therefore interpret appellant's complaint as a challenge to the trial court's admission of the State's medical expert testimony regarding the complainant's injuries.