In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00200-CR

                                                ______________________________

 

 

                            DANIEL DONGRELE LINDLEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0819779

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            Just
a day after Daniel Dongrele Lindley was placed on deferred adjudication
community supervision for two cases of attempted capital murder, the State
moved to adjudicate Lindley’s guilt and have his supervision revoked.  The trial court found Lindley was in
violation of the terms and conditions of his supervision, adjudicated Lindley,
and sentenced him to forty-five years in prison for each case.[1]  We affirm the trial court’s rulings and
sentences.  We find no error in the State’s
failure to consent in writing to Lindley’s waiver of a jury trial; the evidence
is sufficient to support the adjudication; and Lindley has not demonstrated any
due process violation.   

I.          State’s Failure to
Waive Jury Trial

            Lindley
claims the trial court’s judgment is void because there is nothing in the record
showing the State consented, in writing, to Lindley’s waiver of a jury trial.[2]  Lindley failed to timely appeal the order
placing him on community supervision.[3]  An appeal from an order revoking community
supervision is limited to the propriety of the revocation.  Corley v. State, 782 S.W.2d 859, 861
n.2 (Tex. Crim. App. 1989); Hoskins v. State, 425 S.W.2d 825, 828 (Tex.
Crim. App. 1967); Holiday v. State,
983 S.W.2d 326, 327–28 (Tex. App.––Houston [1st Dist.] 1998, pet. ref’d) (op.
on reh’g).  The right to raise issues
arising from the original plea proceeding is available only in appeals taken
when deferred adjudication community supervision is first imposed.  Manuel v. State, 994 S.W.2d 658, 661–62
(Tex. Crim. App. 1999). 

            Lindley
is correct that if the judgment placing him on deferred adjudication community
supervision was void, he could raise that jurisdictional shortcoming in his
appeal from the order adjudicating him.  Nix v. State, 65 S.W.3d 664, 668 (Tex.
Crim. App. 2001).  A judgment of conviction
is void in very rare circumstances, none of which are present here.  Id.


            Lindley
argues that because there is nothing in the record, specifically nothing in
writing, indicating the State consented to Lindley’s waiver of a jury trial,
the trial court had no jurisdiction to entertain Lindley’s plea.  The requirement of obtaining the State’s
consent in order to waive a jury trial protects the interests of the State to
insist on a jury trial, not the defendant’s rights.  “[C]onsent by the state is not a
jurisdictional requisite to the rendition and entry of an otherwise valid
judgment.”  Shaffer v. State, 769 S.W.2d 943, 944 (Tex. Crim. App. 1989).  The State’s failure to provide written
consent as required by Article 1.13 is not “error as to a defendant or from
which a defendant can complain.”  Id. at 945.  We overrule Lindley’s first point of
error.  

II.        Sufficient Evidence to
Adjudicate Guilt

            Lindley
was indicted for two cases of attempted capital murder:  he was charged with attempting to kill Leigh
Ann Smith and Smith’s daughter, who was seven at the time of trial.  One of the terms and conditions of Lindley’s
community supervision was that he was not to communicate with either Smith or
her daughter or “go within 1000 feet” of either victim or their residence.  About 5:00 or 6:00 p.m. the day Lindley pled
guilty and was placed on community supervision, Smith saw Lindley in a car
driven by Lindley’s friend.  Smith and
her daughter were at a local water park in Sulphur Springs.  Smith recognized Lindley’s friend, the driver
of the car, who was a black male.  Smith
saw Lindley and testified she made eye contact with him.  Smith said Lindley and his friend drove
around the park “a few” and “multiple” times. 
She testified the pair continued to circle the park after Lindley and
Smith exchanged eye contact.  There was
testimony the park was within 1,000 feet from the street; Smith testified her
daughter was at the park and thus within the same 1,000 feet.  

            Lindley’s
girlfriend, Bridgette Childress, testified that she, a white female, was
driving Lindley around the park on the day in question, after having picked him
up from jail.  She said they drove around
the park one time, looking for a friend of Lindley, then left the area.  She said they did not see Smith at the
park.  Childress also testified that the
day before the adjudication hearing, Smith told Childress she was not sure she
had seen Lindley on the day in question. 
Both witnesses acknowledged that Lindley’s grandmother, with whom Lindley
lived before being sent to jail, lived in the neighborhood of the park.    

            Our
review of an order revoking community supervision is limited to determining
whether the trial court abused its discretion. 
Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim. App.
2006).  In determining questions
regarding sufficiency of the evidence in community supervision revocation
cases, the State must prove, by a preponderance of the evidence, that the
defendant violated a term of his or her community supervision.  Id. 
A preponderance of the evidence exists when the greater weight of the
credible evidence creates a reasonable belief that the defendant has violated a
condition of his or her supervision.  Id.
at 764; Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App.
1974).

            The
trial court is not authorized to revoke supervision without a showing that the
probationer has violated a condition of the community supervision imposed by
the court.  DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim.
App. 1987).  In a community supervision
revocation hearing, the trial judge is the sole trier of fact.  Jones v. State, 787 S.W.2d 96, 97
(Tex. App.––Houston [1st Dist.] 1990, pet. ref’d).  The trial judge also determines the
credibility of the witnesses and the weight to be given to their
testimony.  Id.  The judge may accept or reject any or all of
the witnesses’ testimony.  Mattias v.
State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).   

            Here,
distinct conflicts were presented.  Smith
testified that Lindley was in a vehicle being driven down the street directly
in front of her when she was at the water park. 
She recognized him and his friend, a black male, and identified the
automobile they were in.  As he passed
by, he looked directly at her and they made eye contact; the driver of the
vehicle kept driving around the park several times, and she was certain that Lindley
saw her there.  Childress, a white
female, testified that she picked Lindley up from jail and they drove by the
park once and did not see Smith.  The
trial court was required to judge the credibility of the witnesses and
determine if Lindley and a black male drove several times around the park and
made eye contact with Smith, or if Lindley, riding with a white female, drove
only once around the park without encountering Smith.  The trial court announced that it had “observed
the countenances of the witnesses and has judged the credibility of the
witnesses” in arriving at its conclusion. 
The trial court did not abuse its discretion in finding sufficient
evidence of a violation of the order.    

III.       Due Process 

            Lindley
next argues that unless the State is required to prove that he intentionally or
knowingly came within 1,000 feet of the victims, that condition is “void for
vagueness” and, therefore, his due process rights were violated when the trial
court revoked his supervision.  Usually “void
for vagueness” issues are raised in an attack on the constitutionality of a
statute.  See generally Gillenwaters v. State, 205 S.W.3d 534, 536 (Tex.
Crim. App. 2006); Perez v. State, 261
S.W.3d 760, 768–69 (Tex. App.––Houston [14th Dist.] 2008, pet. ref’d).  Here, Lindley is complaining not about a
statute, but about a term and condition imposed on him by the trial court, to
which Lindley affixed his signature and thumbprint.  An award of community supervision is not a
right, but a contractual privilege, and conditions thereof are terms of the
contract entered into between the trial court and the defendant.  Therefore, conditions not objected to are
affirmatively accepted as terms of the contract.  Speth v. State, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  Lindley made no objection to the trial court
that the terms and conditions were unclear at the time they were imposed.  A defendant cannot complain about community
supervision conditions for the first time on appeal.  Id. at 535.  

            The
argument that Lindley should not be held responsible because he did not know that
Smith and her daughter were at the park is belied by the evidence that Lindley continued
to circle the park after first encountering Smith.  Further, the case on which Lindley relies is
distinguishable.  In Leach v. State, 170 S.W.3d 669 (Tex. App.––Fort Worth 2005, pet.
ref’d), the appellant challenged the constitutionality of a statute for
vagueness.  Tex. Code Crim. Proc. Ann. art. 42.12, § 13B(a)(1)(B) (Vernon
Supp. 2010) (mandating that as to one placed on community supervision for a
sexual offense against a child, the order required that probationer not go
within 1,000 feet of “premises where children commonly gather”).  Here, the complaint does not concern a
statute, but a discretionary condition imposed by the trial court which was not
challenged at the time it was imposed. 
This condition is much more specific than the one in Leach—Lindley was not to go within 1,000
feet of a specifically named victim, which is quite different from the broad
language in Leach regarding “where
children commonly gather.”  Even in Leach this argument was rejected when
the appellate court found ample evidence in the record that Leach was aware
children were regularly present in the apartment complex common area where
Leach was seen watching the children.  Leach, 170 S.W.3d at 675.    

            Lindley
also argues that the trial court erroneously considered evidence of conduct
which was not alleged in the State’s motion to adjudicate.  The day before the adjudication hearing,
Childress was on the telephone with Lindley and gave the telephone to Smith,
thus facilitating communication between Lindley and Smith.  This would be in violation of the terms of
Lindley’s supervision order, but was not alleged in the motion.  The authority of the trial court to revoke community
supervision is limited by the allegations of which the probationer has due
notice, those which are contained in the written motion to revoke filed during
the term of the probationary period.  Zillender v. State, 557 S.W.2d 515 (Tex.
Crim. App. 1977).

            At
the conclusion of the hearing, the trial court announced that Lindley violated
condition (cc-1) of the community supervision order (“Defendant shall not . . .
go within 1000 feet of the victim(s)”) and immediately stated, “I’m going to
find him guilty at this time of attempted capital murder.”  The trial court had the authority to revoke
community supervision and adjudicate Lindley’s guilt on a finding of any
violation of community supervision.  Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. [Panel Op.] 1980).  The
evidence affirmatively shows that the trial court revoked the community
supervision and found Lindley guilty of the offense based on the violation of
the condition as alleged in the motion to adjudicate.  This finding, which was supported by
evidence, was sufficient to find Lindley in violation of his terms and
conditions and, therefore, sufficient to support adjudication and
revocation.  

            We affirm the judgment of the trial
court.  

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          November 30, 2010

Date Decided:             December 17, 2010

 

Publish

 











[1]Lindley
presents a single brief addressing both cases. 
The issues and arguments are the same for both convictions, and we reach
the same conclusion in both cases. 
Please see our opinion of instant date, Lindley v. State, cause number 06-09-00201-CR.  

 





[2]When
a defendant wishes to waive his or her right to a jury trial, among other
requisites, the defendant must secure the consent of the State:  “the consent and approval of the attorney
representing the State shall be in writing, signed by him, and filed in the
papers of the cause before the defendant enters his plea.”  Tex.
Code Crim. Proc. Ann. art. 1.13 (Vernon 2005).

 





[3]Lindley’s
instant appeals are the result of the Texas Court of Criminal Appeals granting
Lindley out-of-time appeals.  Ex parte Lindley, Nos. AP-76,246,
AP-76,247 (Tex. Crim. App. Oct. 28, 2009). 
The Texas Court of Criminal Appeals’ opinion allows Lindley to appeal
the judgments of conviction.  We see
nothing in the record or the high court’s opinion indicating Lindley sought or
was granted the right to tardily appeal from the order placing him on deferred
adjudication community supervision. 








remely hard to be able to stay focused on
it without hearing all the facts. But that one statement was awful
strong for the D.A. in my opinion.
 
[DEFENSE COUNSEL]:What number are you?
 
                        JUROR:28.
  
While the record is somewhat unclear as to which statements are attributable to Juror No. 18 and
which are attributable to Juror No. 28,


 it seems reasonably clear that both made similar comments
regarding the guilty plea. At a minimum, some veniremembers expressed some ideas associating
Scott's guilty plea with his guilt on the other charges, thereby exposing the entire panel to such ideas. 
We point out also that Juror No. 18 was on the convicting jury; Juror No. 28 was not. At any rate,
we find these comments likely indicative of the impact that a guilty plea may have on a juror
deliberating closely-related allegations.
            We add that an admission to possession of the videotapes of the showering boys bears
significantly on the allegations of production and promotion of a sexual performance of a child. In
its opening statement, the State seized on both the guilty plea itself and its close relation to the
production or promotion charges: 
He's already pled guilty to possession of child pornography, the videotapes of the
boys that he made. According to what I heard on voir dire, it doesn't really seem that
he has an argument over production of a sexual performance because he's the one that
made the videotapes, he's the one that did everything. He hasn't pled guilty to it but
I think the evidence is going to show that that is pretty strong.

The State similarly mentions the guilty plea during its closing argument to the jury: "Without
question he has pled guilty to possessing child pornography, so you sign that. Now, if you go to
count two, he hasn't really pled guilty to that, but he has conceded it under all the facts." The State
refers to Scott's guilty plea twice more in its rebuttal, at one point clearly associating the guilty plea
to the inducement charges as well:
He's already pled that he knew what was on these tapes. That's knowledge, that's
intent, that's conduct on his part to induce. Make no mistake about it. There is no
question about it.

The State's several references to and reliance on the guilty plea in its argument to the jury would
serve only to reinforce any of the ideas that the jurors had regarding the impact of Scott's guilty pleas
to Counts III. As did the Texas Court of Criminal Appeals in Llamas, we conclude the trial court's
failure to grant Scott's timely request for mandatory severance affected Scott's substantial rights.
            We also find persuasive the Waco court's analysis in Wheat because, although that case
involved discretionary severance under Section 3.04(c), it specifically addresses the impact of failure
to sever allegations to which a defendant pled "guilty." The court in Wheat was called on to
determine whether failure to grant discretionary severance of three counts, to two of which Wheat
pled "guilty," caused "unfair prejudice." Our inquiry is somewhat similar in that we must determine
whether the trial court's error in refusing mandatory severance of Counts III to which Scott pled
"guilty" had a "substantial or injurious effect on the jury's verdict." See Llamas, 12 S.W.3d at 472.
            Since here, as in Wheat, we cannot determine what strategy defense counsel would have
taken, we cannot conclude the trial court's failure to sever Scott's guilty pleas to each Count III is
harmless error. Now, it is not unheard of for defense counsel to utilize a strategy like the one defense
counsel here was forced to employ. That is, there may be a tactical advantage in admitting to the jury
that the appellant did commit some offense, but that the appellant is not guilty of another, often more
serious offense. Here, however, it seems clear from defense counsel's attempts to sever the child
pornography allegations that he would not have opted to employ such a strategy.
            While we acknowledge that there is evidence of Scott's guilt of the allegations of production
or promotion of a sexual performance by a child, we bear in mind at least two substantial rights—the
presumption of Scott's innocence and his right to a fair trial on Count II of each indictment—both
substantial rights in terms of harm analysis. Both of these substantial rights were most likely
compromised by the trial court's failure to sever each Count III. Therefore, we sustain Scott's point
of error and reverse and remand for a new trial as to each Count II. See Tex. Code Crim. Proc.
Ann. art. 44.29(a) (Vernon Supp. 2004–2005). In connection with each Count III, Scott's "guilty"
plea is unaffected by the failure to sever.


 He is, however, entitled to a new trial on punishment



relating to his "guilty" pleas. See Tex. Code Crim. Proc. Ann. art. 26.14; art. 44.29(b) (Vernon
Supp. 2004–2005); Wheat, 160 S.W.3d at 637.
Conclusion
            The search was valid and the physical evidence was admissible. But, since there is legally
insufficient evidence to sustain Scott's conviction for inducing a sexual performance of a child, we
reverse the trial court's judgment of conviction and render a judgment of acquittal as to Count I in
each indictment. Since we cannot disregard the trial court's error in its failure to sever each Count
III pursuant to the mandatory severance provision of Section 3.04(a), we reverse the convictions as
to each Count II, sever each Count III from the associated Count II, and remand the cause for a new
guilt/innocence trial on each Count II and a new punishment trial on each Count III. Tex. Code
Crim. Proc. Ann. art. 44.29; see Wheat, 160 S.W.3d at 637.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 13, 2005
Date Decided:             September 8, 2005

Publish