# NO. 12-20-00015-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSUE TALAVERA,* *APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Josue Talavera appeals the trial court's judgment adjudicating him guilty of money laundering. In two issues, Appellant argues that the trial court abused its discretion by adjudicating him guilty and revoking his community supervision. We affirm.

## BACKGROUND

Appellant was indicted in 2017 for the first-degree felony offense of engaging in organized criminal activity.[1] Ultimately, pursuant to a plea agreement, Appellant pleaded "guilty" to the lesser-included third-degree felony offense of money laundering, and in September 2019, the trial court placed him on deferred adjudication community supervision for two years.[2]

The State filed a motion to adjudicate Appellant's guilt in December 2019 alleging that he failed to abide by the terms of his community supervision. Specifically, the State alleged that Appellant used or consumed marijuana and that he attempted to alter or falsify his drug test results by providing a diluted urine specimen. Appellant pleaded "not true" to the allegations in

---

[1] *See* TEX. PENAL CODE ANN. § 71.02 (West Supp. 2020).

[2] *See id.* §§ 34.02 (West 2016); 71.02(a)(10) (offense of money laundering is a lesser-included offense of engaging in organized criminal activity).

the State's motion. After a hearing, the trial court adjudicated Appellant's guilt and found the State's allegations to be "true." Accordingly, it found Appellant "guilty" of the underlying offense, revoked his community supervision, and assessed his punishment at confinement in a state jail facility for two years. This appeal followed.

Appellant's initial appellate counsel made a professional evaluation of the record and concluded that there was no reversible error. Accordingly, counsel filed a motion to withdraw as counsel as well as an *Anders* brief. Appellant thereafter filed a pro se brief as part of the *Anders* procedure.

In the interim, Appellant's appellate counsel was elected to serve as Judge of the 114th Judicial District Court, Smith County, Texas, and we granted his motion to withdraw. We subsequently remanded the case for appointment of new counsel. The trial court appointed new counsel, who made her own evaluation of the record, and filed a brief raising a single issue challenging the constitutionality of the "time payment" fee assessed against Appellant. Appellant expressed his dissatisfaction with the issue raised in his newly appointed counsel's brief, indicating that he wished to proceed pro se on his appeal, and that we address the issues raised in his earlier pro se brief he filed as part of the *Anders* procedure.

We remanded the matter for a hearing advising Appellant of the dangers and disadvantages of self-representation and to determine whether he knowingly and intelligently made the decision for self-representation on appeal.[3] After the hearing, the trial court found that Appellant knowingly and intelligently decided to proceed pro se on appeal. Accordingly, we granted Appellant's newly appointed counsel's motion to withdraw her amended brief and her motion to withdraw as counsel. We likewise have granted Appellant's motion for pro se representation on appeal and will proceed only on the issues raised in his earlier filed pro se brief.[4]

---

[3] Since the matter arose in the trial court where Appellant's original appellate counsel became Judge, the trial court transferred the matter to the 7th Judicial District Court in Smith County, Texas.

[4] Appellant is acting pro se; however, pro se litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure; otherwise, pro se litigants would benefit from an unfair advantage over parties represented by counsel. *See Morgan v. State*, No. 12-06-00226-CR, 2009 WL 2767300, at *1 n.1 (Tex. App.—Tyler Sept. 2, 2009, pet. ref'd, untimely filed) (mem. op., not designated for publication) (citing *Perez v. State*, 261 S.W.3d 760, 763 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd)).

In his two issues, Appellant contends that the trial court abused its discretion when it revoked his community supervision.

**Standard of Review**

Appellate review of an order adjudicating guilt and revoking community supervision is limited to determining whether the trial court abused its discretion in finding that the defendant violated the terms of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The appellate court views the evidence in the light most favorable to the trial court's order. *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

To revoke community supervision, the State must prove by a preponderance of the evidence that the defendant violated a condition of his community supervision. *Id.* at 438. The State satisfies this burden if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision as alleged. *Solis v. State*, 589 S.W.2d 444, 447 (Tex. Crim. App. 1979). Proof of a single violation is sufficient to support revocation. *Greer v. State*, 999 S.W.2d 484, 486 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement. *See id.*

**Applicable Law**

The Texas Code of Criminal Procedure authorizes a certificate of analysis and chain of custody affidavit to establish the requisite chain of custody and laboratory analysis results of physical evidence without the necessity of the analyst's personal appearance in court to authenticate the evidence as a predicate to its admissibility. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.41 §1 (certificate of analysis), 38.42 §1 (chain of custody affidavit) (West 2018). However, these mechanisms do not limit the right of a party to summon a witness or to introduce admissible evidence relevant to the chain of custody and subsequent results of the analysis. *See id.* arts. 38.41 §2 (certificate of analysis), 38.42 §2 (chain of custody affidavit).

Rule 901 provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. Tex. R. Evid. 901(a). Authentication can be accomplished by testimony from a witness with knowledge that an item is what it is claimed to be. *Id.* 901(b)(1). The authentication requirement for admissibility of physical evidence is met once the State has shown the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory. *See Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Absent evidence of tampering or other fraud, problems in the chain of custody do not affect the admissibility of the evidence. *See Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007). Similarly, "because the chain-of-custody requirement is not intended to be stringently applied, if the trial court is satisfied that the evidence is what the proponent claims, any purported gaps or theoretical breaches in the chain of custody go to the weight of the evidence, not its admissibility." *LopezGamez v. State*, 622 S.W.3d 445, 458 (Tex. App.—Fort Worth 2020, pet. ref'd). Chain of custody links may be proved with circumstantial evidence. *Cain v. State*, 501 S.W.3d 172, 175 (Tex. App.—Texarkana 2016, no pet.). Finally, the State need not necessarily admit the specimen itself to prove the results. *See Lake v. State*, 577 S.W.2d 245, 246 (Tex. Crim. App. [Panel Op.] 1979).

**Discussion**

Appellant argues in his first issue that the State must offer the actual lab results and documentation proving the chain of custody, and that testimony establishing the results of the urinalysis and chain of custody is insufficient in and of itself. Appellant also contends in his second issue that the evidence is insufficient to establish the chain of custody, that he used marijuana, and that he diluted the urine sample to justify the trial court's adjudicating him guilty and revoking his community supervision.

Appellant did not object to the State's chain of custody evidence or otherwise timely complain to the trial court that the State allegedly failed to present the requisite evidence establishing a proper chain of custody of the urinalysis specimen. Instead, Appellant's counsel proclaimed for the first time in his closing argument that the State failed to provide a sufficient chain of custody without providing any specific information as to how the State failed in this regard. Therefore, Appellant has not preserved this issue for our review. *See Stark v. State*, No. 12-04-00311-CR, 2005 WL 2046425, at *2 (Tex. App.—Tyler Aug. 24, 2005, no pet.) (mem.

op., not designated for publication) (holding defendant waived issue when he did not timely object to State's alleged failure to establish chain of custody) (citing TEX. R. APP. P. 33.1; **Aguilar v. State**, 26 S.W.3d 901, 905–06 (Tex. Crim. App. 2000)).

Even if Appellant had preserved the issue, we conclude the evidence is sufficient to satisfy the chain of custody requirement. Contrary to Appellant's contention, the State need not necessarily provide the lab results in documentary form by such method as the certificate of analysis and chain of custody affidavit. In other words, while those are available methods, they are not necessary, and the State may establish the results and chain of custody through testimony of relevant witnesses, such as the community supervision officer administering the test, the community supervision supervisor, and the laboratory analyst performing the analysis. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.41 §§1-2 (certificate of analysis), 38.42 §§1-2 (chain of custody affidavit); **Lake**, 577 S.W.2d at 246.

At the adjudication hearing, Smith County Community Supervision Officer Halie Melot testified that she was Appellant's community supervision officer, he reported directly to her, and that she is the custodian of records for all probationers and their records at the relevant district court. Officer Melot also testified that when Appellant reported for community supervision, Smith County Community Supervision Officer Edwin Gonzalez administered Appellant a drug test, which was positive for marijuana. Officer Melot explained that the sample itself was not the "correct color," and that it was very clear, indicating to her that it might contain dilutants or altering substances. Officer Gonzalez testified that he remembered Appellant tested positive, and there were "faint lines" in it. He referred the result to his supervisor, who determined that the sample should be sent to the lab for further testing.

Patricia Pizzo, Director of Toxicology at Alere Toxicology Services, then testified that she tested the same sample, which confirmed the presence of marijuana. She explained that she was the custodian of records, that her lab received the sample from a bonded courier, the exterior package was opened and inspected for damage, and that she confirmed the package was in fact sealed. She further explained that the interior bag containing the sample was also sealed and that the package contained a chain of custody document. She testified that she inspected the actual sample container and ensured that the sample was sealed and that the recorded information on the container matched the chain of custody form. She testified that there was no violation of protocol, that the chain of custody documents were "in order," and the sample was suitable for

testing. This evidence satisfies the chain of custody requirement. *See **Lake***, 577 S.W.2d at 246 (holding officer's testimony who made arrest and seizure, along with testimony from chemist who made the analysis, was sufficient to establish chain of custody).

Pizzo then described the testing procedure and concluded that the sample was positive for marijuana, specifically 16 nanograms of marijuana per milligram of creatinine. She also testified that the sample was diluted because it contained creatinine levels of 9.1 milligrams per deciliter, and an average male donor should be approximately 190 milligrams per deciliter. Pizzo concluded that the sample was diluted "about twentyfold," which is "extremely significant." Pizzo testified that a person such as Appellant would have to drink approximately three liters of water in thirty minutes for such a result, which could cause a severe electrolyte imbalance resulting in serious health issues and possibly even death. She also stated that exogenous water could have been added directly to the sample itself. Finally, Pizzo testified that she engages in a "normalization" process to factor in the amount of water consumed. After conducting that process, the result showed that Appellant had approximately 175 nanograms of marijuana per milligram of creatinine, resulting in a positive test, which was much more than the already positive test of 16 nanograms of marijuana per milligram of creatinine in the un-normalized sample.

Appellant testified that he was initially unable to provide a sample, so he followed instructions, waited in the lobby, and drank water until he could urinate, which was approximately 30 to 45 minutes later. He explained that he drank a substantial amount of water during that time. He claimed that the amount of water he consumed to force himself to urinate resulted in the diluted sample. He denied consuming any illicit substances. After Officer Gonzalez told Appellant that he tested positive, Appellant claimed that he asked to provide another sample, a request that went unfulfilled. He also testified that the sample lid fell on the bathroom floor, which he theorized could contribute to the dilution. Later in his testimony, he posited that the sample might have resulted in a positive test due to other fluid on the floor he thought could be tainted urine from another person when he dropped the lid. Appellant initially testified that he had never used marijuana, but admitted that declaration was untrue, stating that his last use was three to four years prior to the hearing. He further admitted that he tested positive for methamphetamine in a separate pretrial urinalysis prior to being placed on deferred

6

adjudication community supervision. He denied using methamphetamine, alleging that there were defects in the administration of that test as well.

Officer Gonzalez did not recall Appellant stating that the specimen lid container fell on the floor or requesting a second test. Officer Gonzalez testified that he would have noted in his records Appellant's request for a second test, but that such a notation was absent, which indicated to him that Appellant did not request another test. The officer stated that if the cup did not seal properly, then he would have administered a second drug test. Officer Gonzalez did recall that Appellant "pressed hard" on the seal, ripping it, so the officer applied a backup seal, which he noted in the record.

Because a revocation hearing is an administrative, and not a formal, criminal proceeding, the State need only prove its allegations by a preponderance of the evidence and not beyond a reasonable doubt. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial court, as finder of fact, was free to resolve the issues before it in favor of believing the testimony of the State's witnesses and disbelieving Appellant. *See Taylor v. State*, 604 S.W.2d 175, 179 (Tex. Crim. App. [Panel Op.] 1980) (holding that in a hearing on a motion to revoke community supervision, the trial court is the sole trier of fact, and the judge of the credibility of the witnesses and the weight to be given their testimony). Thus, reviewing the record in the light most favorable to the trial court's decision, the State satisfied its burden to prove by a preponderance of the evidence the allegations in its motion to adjudicate Appellant's guilt. *See Tamez v. State*, No. 13-03-207-CR, 2004 WL 5474401, at *1 (Tex. App.—Corpus Christi June 24, 2004, no pet.) (op., not designated for publication) (holding testimony of probation officer who took initial positive drug screening of defendant on community supervision, coupled with testimony from lab analyst who tested defendant's urinalysis, sufficiently proved chain of custody and result warranting a finding that defendant violated his community supervision justifying its revocation).

Therefore, we cannot conclude that the trial court abused its discretion by finding at least one of the allegations against Appellant to be true and in subsequently adjudicating his guilt and revoking his community supervision. *See Flournoy v. State*, 589 S.W.2d 705, 708 (Tex. Crim. App. [Panel Op.] 1979) (noting that the trial court's authority to revoke is "substantially absolute").

Appellant's first and second issues are overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, the trial court's judgment adjudicating him guilty and revoking his community supervision is ***affirmed***.

**GREG NEELEY**
Justice

Opinion delivered July 7, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 7, 2021

NO. 12-20-00015-CR

**JOSUE TALAVERA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 114-1342-17)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*