# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00142-CR

**Robert Gordon Barstow, Appellant**

**v.**

**The State of Texas, Appellee**

FROM COUNTY COURT AT LAW NO. 8 OF TRAVIS COUNTY
NO. C-1-CR-09-206212
HONORABLE CARLOS HUMBERTO BARRERA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the trial court convicted appellant Robert Gordon Barstow of the misdemeanor offense of criminal mischief. *See* Tex. Penal Code Ann. § 28.03(a)(2) (West Supp. 2010). Punishment was assessed at 60 days' confinement in county jail and a $500.00 fine, but the trial court suspended imposition of the sentence and placed Barstow on community supervision for one year. In two issues on appeal, Barstow challenges the sufficiency of the evidence and asserts that the charging instrument "does not support a guilty verdict."[1] We will affirm the judgment.

---

[1] Barstow has proceeded pro se both at trial and on appeal. In his reply brief, Barstow represents that he is "80 years old," "graduated from Law School in 1953," and "has not practiced [law] for over 50 years." We will construe the briefing rules liberally as we are required to do. *See* Tex. R. App. P. 38.9. However, a pro se appellant is required to comply with applicable laws and rules of procedure. *See Perez v. State*, 261 S.W.3d 760, 764 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). To the extent that Barstow purports to raise additional complaints on appeal other than the ones indicated above, we hold that they are waived. *See* Tex. R. App. P. 38.1; *Perez*, 261 S.W.3d at 764 n.2.

## BACKGROUND

This case involves a property dispute between Barstow and Travis County that began more than two decades ago.[2] According to the evidence presented at trial, the Lower Colorado River Authority (LCRA) owns Bob Wentz Windy Point Park, a public park located on Marshall Ford Marina at Lake Travis. LCRA leases the land to Travis County for the purpose of operating and managing the park. Barstow owns an adjacent piece of property, identified in real property records as Block C of the Comanche Village Subdivision, upon which he operates his own private park. Barstow's property, although located along the lakefront, has no terrain suitable for launching boats. Barstow does, however, have an easement over the LCRA property that allows boats and other watercraft to be launched from LCRA property.

Barstow's rights under the easement are set out in a 1988 district-court judgment, a copy of which was admitted into evidence during trial. According to the judgment, the owner of Block C has a right "to cross over the LCRA's property from Block C to reach the water's edge of Lake Travis and to return to Block C." The owner "may also authorize or permit others, including without limitation invitees and licensees for business or social purposes to do so." However, those who use the easement "have the right of ingress and egress over the LCRA property only to reach the water's edge. . . . The words 'ingress and egress' indicate an inherent right to pass through the servient estate (LCRA property) to and from Block C but do not imply the right to linger on the easement or servient estate for recreational purposes or to exercise water front privileges. Use of any

---

[2] *See Barstow v. State*, 742 S.W.2d 495 (Tex. App.—Austin 1987, writ denied) (affirming in part and reversing in part district court judgment partitioning land owned by Barstow and Travis County as tenants in common).

part of the easement or servient estate for purposes other than ingress or egress is not necessary for the fair enjoyment of the right to reach the water's edge and is prohibited."

Moreover, those exercising Barstow's easement rights "may take boats across the easement and place them in the public waters," but "only such portions of the LCRA land as are reasonably necessary for boat launching may be used. After launching the boats, all vehicles and boat trailers used in connection with the boat launching must immediately be removed from the LCRA land." Additionally, the judgment provides that "in the event that Travis County, in its sole discretion, constructs a boat launching ramp on the LCRA land," then "those launching boats in connection with [Barstow's] easement rights on the LCRA land shall be limited to launching those boats from the ramp."

Although granting Barstow the above rights, the judgment also prohibits Barstow from engaging in certain activities. The judgment provides that Barstow "is permanently enjoined from directly or indirectly altering, removing, installing or obstructing the causeway or any other improvement at Bob Wentz Windy Point Park" and "from interfering with the operation, management and enforcement of the rules of Bob Wentz Windy Point Park."

The County subsequently constructed a boat ramp across the easement. Park ranger Jeff Allbritton testified that Travis County had placed large boulders, some weighing up to half a ton, along each side of the boat ramp in order to direct the flow of traffic on the lakefront and prevent motor vehicles from driving along the shoreline. The boulders prevented motor vehicles from accessing the lakefront from any area of the easement other than the boat ramp. According to

3

Allbritton, this was done "for the safety of the swimmers," as "the majority of the park is dedicated to swim-only activities."

The boulders are the focus of the present dispute between the parties. Barstow believes that when the boulders are submerged under water during flooding, they are "navigation hazards to boats approaching and leaving the easement." Barstow also believes that when the boulders are not submerged under water, they "prevent easement users from driving cars to the water's edge beyond them." In a series of emails, Barstow asked the County to remove the boulders from the easement. When the County refused, Barstow decided to remove them himself using a tractor. It is undisputed that Barstow did this on multiple occasions. Each time he did so, the County moved the boulders back into place.

On April 4, 2009, Allbritton observed Barstow "once again on his tractor, out on the point, within the easement moving rocks, again, like he was told countless times before that he couldn't do."[3] Allbritton "approached Mr. Barstow and asked him if he knew that moving these rocks was prohibited or that at least he knew that we were not giving him permission to move the rocks." According to Allbritton, Barstow told him "that he fully understood that, but he did not need our permission." Allbritton further testified that Barstow was moving the boulders to the edge

---

[3] According to the State, Barstow had been tried for a similar offense two days prior to committing this offense, but he had been acquitted because the State had "mispled the case" under a different theory of the criminal-mischief statute. *See* Tex. Penal Code Ann. § 28.03(a)(1) (West Supp. 2010) ("damaged or destroyed" theory). The prior case was tried before the same trial court, and certain exhibits from that trial were admitted into evidence for this trial. However, the transcript from the prior trial does not appear in the record. Consequently, as the State acknowledges in its brief, "much of the contextual background for this offense is absent, and the testimony and discussions contained in the record of this second trial are often difficult to fully comprehend."

of a cliff, below which was a swimming cove that was popular with park visitors. Allbritton recalled that at the time Barstow was moving the boulders, a family of four was in the cove, and Allbritton had to warn them that "they had to pick up and move from where they were at and find another area to recreate due to Mr. Barstow's actions." Allbritton took photographs and recorded video of the boulders, the tractor that Barstow was using to remove them, and the surrounding area, and the video and photographs were admitted into evidence.

Evidence was also admitted regarding the damages that the park had sustained as a result of Barstow's actions. Allbritton testified that Barstow's removal of the boulders was a substantial inconvenience to Travis County because the County had to move the boulders back into place, during which time Allbritton, as park ranger, "had to stop what I'm doing to go out there and make sure that everyone is staying out of the way." According to park supervisor Tim Speyier, on this particular occasion, the total cost of replacing the boulders that Barstow had removed was $158.00, which included the labor and equipment that was necessary to return the boulders to their original location.

Barstow testified in his defense. Barstow admitted to moving the boulders but claimed that "it was necessary for me to move them out of the way in order to use my property." He explained,

> The barricade keeps me from reaching the water's edge on either side of the barricade that's why I had to move it. . . . The judgment says that we may—the easement that the LCRA granted was to drive a car to the water's edge, once you're there to leave the car and go in and use the lake. This barricade stops me from doing it. We've done this a number of times. We keep doing the same dance. I insist on using my property. I have on several occasions asked the County to explain to me why I

5

cannot move those rocks, what the law is so that I could consider their answer and not move the rocks, but they have never told me that.

Barstow also characterized the boulders as a "nuisance" that prevented him from using his property and claimed he had a "common law right" to abate the nuisance. Barstow concluded,

> Now, I believe that the easement gives me consent to move obstructions and improve it. I don't need any other consent. But if that's not the case, then I believe the common law gives me a right. And the—and the County's consent is implied when it puts the rocks in my way. It's implied they're consenting for me to move them out of the way. And that's what I did, and I relied on those authorities to make those decisions.[4]

On cross-examination, Barstow acknowledged that he was permanently enjoined from altering, removing, or installing any improvement at the park, but he claimed that moving the boulders was not a violation of that injunction. In Barstow's view, the County "never had a property right managed and leased to them to put rocks up in the way of using my easement, and its uses are secondary to my uses, which are dominant. I own a dominant estate. It owns the servient—it leases the servient estate, and I am dealing only with my property when I move those rocks. . . . I am attempting to use my property . . . and the County has no right whatsoever to interfere. Yes, I am enjoined from doing—from doing those things in Wentz Park, but I make that distinction."

---

[4] Barstow was referring to sections of the Restatement of Torts and Texas Jurisprudence on nuisance law and a 1994 case out of the Fort Worth Court of Appeals, which we discuss below, that reversed a criminal mischief conviction on the basis of insufficient evidence. *See Vantil v. State*, 884 S.W.2d 212 (Tex. App.—Fort Worth 1994, no pet.). Barstow offered copies of the documents into evidence, and the trial court admitted them for "the purpose of consideration with regard to Mr. Barstow's belief, warranted or unwarranted that he might have had a necessity defense."

The trial court found Barstow guilty as charged. The trial court commented on its finding as follows: "The reason I do find you guilty is because you went too far. You could move one rock over on this side and one rock over on that side and have full access and drive to whatever water's edge you have a right to without removing all the rocks along the ramp. And when you remove—or you move more than the necessary number of rocks to gain the access that you have a right to, you've gone too far." Barstow was subsequently placed on community supervision for one year. Barstow filed a motion for new trial, which the trial court denied following a hearing. This appeal followed.

## ANALYSIS

In his first issue, Barstow asserts that the County's consent to move the boulders was not necessary and that "LCRA's deed gave consent for Block C's owner to improve and maintain the easement as a matter of law." Because lack of consent is an essential element of the criminal-mischief statute, *see* Tex. Penal Code Ann. § 28.03(a)(2), we construe this issue as a challenge to the legal sufficiency of the evidence.

In response, the State first argues that because the transcript from the prior trial has not been included in the record, this issue "presents nothing for this Court's review." *See* Tex. R. App. P. 34.6(c)(5) (providing that in criminal cases, when appellant complains "that the evidence is insufficient to support a finding of guilt, the record must include all the evidence admitted at the trial on the issue of guilt or innocence and punishment"); *Skinner v. State*, 837 S.W.2d 633, 634 (Tex. Crim. App. 1992) ("[A]n appellate court cannot determine the merits of a challenge to the sufficiency of the evidence without a review of the entire record of the trial before the fact finder");

7

*see also McDougal v. State*, 105 S.W.3d 119, 121 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that appellant has "the obligation of including in the appellate record all evidence admitted at trial when the appellant challenges the sufficiency of the evidence").

However, it does not appear that the transcript of the prior trial was ever admitted into evidence and made a part of the record to begin with. At the beginning of this trial, the State sought to introduce the "evidence and testimony" from the prior trial. The State offered into evidence "State's 1, 2, 3, 4, 5, 6 and 10—as they were marked in the last case, I ask them to be marked the same this time."[5] The State tendered the specified exhibits to Barstow, who responded that he had no objection. The trial court then proceeded to admit the specified exhibits. These exhibits include a copy of the 1988 judgment and photographs of the property. However, none of the specified exhibits include the transcript from the prior trial, and there is nothing in the record to indicate that the transcript was subsequently admitted at a later time.[6] Because the transcript of the prior trial does not appear to have been admitted into evidence, this is not a case in which we are confronted with a partial reporter's record. *See* Tex. R. App. P. 34.6(c)(5) (providing that in sufficiency challenges, record must include "all the evidence *admitted at trial*" (emphasis added)). Accordingly, we can review the merits of Barstow's sufficiency challenge.[7]

---

[5] State's Exhibits 7, 8, and 9 were never identified, offered, or admitted into evidence during trial. There is no indication in the record as to whether one of these unidentified exhibits contained the transcript.

[6] State's Exhibits 11, 12, 13, and 14 were later offered and admitted into evidence, but these exhibits were additional photographs and video of the property and a copy of a fee schedule for Travis County. None of these exhibits include the transcript of the prior trial.

[7] We also note that neither Barstow nor the State cite to anything in the transcript of the prior trial as support for their respective positions on the sufficiency of the evidence. In fact,

In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 318 (1979). We review all the evidence in the light most favorable to the judgment, and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the judgment. *Jackson*, 443 U.S. at 318; *see also Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

The criminal-mischief statute provides in relevant part that "a person commits an offense if, without effective consent of the owner, he intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person." Tex. Penal Code Ann. § 28.03(a)(2). Barstow concedes that he removed the boulders, and he does not challenge the evidence tending to show that his conduct caused Travis County a substantial inconvenience or pecuniary loss. He only disputes whether his conduct was "without the effective consent of the owner."

The relevant terms are defined in the penal code. "Consent" means assent in fact, whether express or apparent. *Id*. § 1.07(a)(11) (West Supp. 2010). "Effective consent" includes consent by a person legally authorized to act for the owner. *Id*. § 1.07(a)(19). "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater

---

Barstow argues in his reply brief that the case can be decided solely on "proper construction of the 1988 judgment" and that "no other evidence of property ownership is needed." The State, in its brief, similarly relies on the language in the 1988 judgment.

right to possession of the property than the actor. *Id*. § 1.07(a)(35). "Possession" means actual care, custody, control, or management. *Id*. § 1.07(a)(39).

The evidence, viewed in the light most favorable to the judgment, supports the trial court's finding that Barstow's conduct was without the effective consent of the owner. First, the record supports the trial court's finding that Travis County was an owner of the property. The lease provides that LCRA leases the property to Travis County for the "development, management, and use for public outdoor recreational purposes as public parks and recreational facilities." From this and other evidence, the trial court could have found beyond a reasonable doubt that Travis County had possession of the property and, thus, was an "owner" of the property for purposes of the statute. *See Williams v. State*, 537 S.W.2d 936, 939 (Tex. Crim. App. 1976) (evidence that one had "care, custody and management" of property sufficient to prove ownership of property); *see also Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986) ("To eliminate the distinctions between general and special owners, and to give anyone with a conceivable connection to the property ownership status, the Legislature, in defining the word 'owner' as it did, clearly gave the word an expansive meaning: anyone having a possessory interest in the property through title, possession, whether lawful or not, or a greater right to possession to the property is an owner of the property."). It does not matter that Barstow also has a possessory interest in the property. *See* Tex. Penal Code Ann. § 28.05 (West 2003) ("It is no defense to prosecution under this chapter that the actor has an interest in the property damaged or destroyed if another person also has an interest that the actor is not entitled to infringe."); *see also Eaton v. State*, 533 S.W.2d 33, 35 (Tex. Crim. App. 1976) (in case involving similar offense of arson, holding that "when the State in a prosecution

10

for arson shows that the person alleged as owner is an owner because he was in possession of the property, the State need not show that the alleged owner had a greater right to possession than the accused"); *Tackett v. State*, No. 05-02-01338-CR, 2003 Tex. App. LEXIS 3760, at *4-6 (Tex. App.—Dallas May 1, 2003, no pet.) (finding evidence sufficient to sustain criminal mischief conviction because victim husband had "interest" in damaged property even though defendant wife also owned property).

Next, the record supports the trial court's finding that Barstow's conduct in removing the boulders was without Travis County's effective consent. Barstow argues that he does not need the County's consent to exercise his ownership rights to the easement which, according to Barstow, include the rights to "improve, maintain, repair, use, reach, and depart the easement without interference." To a certain extent, Barstow is correct. *See, e.g.*, *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974) ("A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner."); *Whaley v. Central Church of Christ*, 227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Every easement carries with it the right to do whatever is reasonably necessary for full enjoyment of the rights granted."); *Shipp v. Stoker*, 923 S.W.2d 100, 103 (Tex. App.—Texarkana 1996, writ denied) (finding dominant estate could be used for both residential and business purposes when general easement contained no restrictions on its use); *Bradshaw v. Lower Colorado River Auth.*, 573 S.W.2d 880, 883-84 (Tex. Civ. App.—Beaumont 1978, no writ) (easement that granted "right of ingress and egress across said land . . . [to] reach the water's edge" was not limited solely to cattle grazing but also included right to use

11

water for recreational purposes); *but see Wall v. Lower Colorado River Auth.*, 536 S.W.2d 688, 691 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.) (easement that granted "right of ingress and egress across the land . . . to the waters' edge" was limited to its express terms and did not include right "to build, construct, and maintain on the land in controversy such buildings, structures, and facilities as are useful and appropriate for lakefront property").

A property owner's easement rights, however, are not unlimited. *See, e.g.*, *Dykes v. Houston*, 406 S.W.2d 176, 181-84 (Tex. 1966) (observing that easement rights "are subject to reasonable regulation" and criticizing easement owner for resorting to self-help; concluding that plaintiff property owners were entitled to "make reasonable use of easements" but that defendant city was entitled "to erect any local barriers, signs, or other devices which are reasonably necessary to protect the public from danger and which do not interfere with plaintiffs' use of their private easements"). In this case, Barstow's rights under the easement are subject to the restrictions set forth in the 1988 district-court judgment. And that judgment contains, among other restrictions, a permanent injunction prohibiting Barstow from "directly or indirectly altering, removing, installing or obstructing the causeway or any other improvement" at the park or from "interfering with the operation, management and enforcement of the rules" of the park. The trial court could have reasonably inferred that the boulders were an improvement to the park and that Barstow had violated the injunction by removing them. The trial court also could have reasonably inferred that by removing the boulders, Barstow had "interfered with the operation, management, and enforcement of the rules" of the park as prohibited by the injunction. Additionally, when asked if Barstow had the "permission of anyone with Travis County" to move the boulders, Allbritton testified, "No, sir."

Allbritton also testified that Barstow had been told "countless times" that he did not have permission to move the boulders and that Barstow had acknowledged that he "fully understood" that the County was "not giving him permission to move the rocks." From the above evidence, the trial court could have found beyond a reasonable doubt that Barstow did not have Travis County's effective consent to move the boulders.

The only case to which Barstow cites in his brief, *Vantil v. State*, 884 S.W.2d 212 (Tex. App.—Fort Worth 1994, no pet.), is distinguishable. In *Vantil*, the defendant, an owner of a mobile-home park, got into a dispute with a tenant over late rental payments. *Id*. at 214. Vantil eventually obtained a court order to evict the tenant from the property, but the tenant parked his truck on Vantil's property in a manner so as to prevent county authorities from removing the trailer. In an attempt to move the truck out of the way, Vantil entered the truck by removing its rear sliding window, causing damage to the truck. The tenant subsequently filed a criminal complaint against Vantil, who was charged with and convicted of the offense of criminal mischief. *Id*. The question on appeal was whether the evidence was sufficient to support a finding that the defendant lacked effective consent to enter the tenant's property. *Id*. The Fort Worth Court of Appeals concluded that it was not, reasoning that neither the defendant nor the victim "were asked a single question about consent" and observing that the State conceded "that the specific issue of consent was never addressed at trial." *Id*. In this case, in contrast, the issue of consent was addressed at trial—documentary evidence was admitted from which a trier of fact could reasonably infer lack of consent, and one of the State's witnesses testified directly that Barstow did not have permission from anyone in the County to remove the boulders. Also, the Fort Worth Court of Appeals found

it significant that the alleged victim in the case "was purposefully using the truck as a barrier to prevent his lawful eviction from the mobile home park." *Id.* In the court's opinion, Vantil had merely "resorted to nonviolent self-help to facilitate the court-ordered eviction." *Id.* This case, however, presents a situation in which any right of the defendant to self-help is limited by a court order, specifically the 1988 judgment enjoining Barstow from interfering with the park's operations.[8]

Finally, to the extent that Barstow is arguing that he had a right under "the common law" to "abate the nuisance" that he believed the boulders to be, this argument is without merit. Even if we were to assume that the boulders are in fact a nuisance as that term is defined, abating a nuisance is not recognized in the penal code as a defense to criminal mischief. Thus, it is not a valid defense to the commission of the offense. *See Willis v. State*, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990) (recognizing that "the power to create and define offenses rests within the sound discretion of the legislative branch of government" and that this "necessarily includes the power to establish and define the defenses to criminal offenses"); *see also State v. Medrano*, 67 S.W.3d 892, 905 (Tex. Crim. App. 2002) (Womack, J., dissenting) ("[T]here is no common law of crimes in Texas."). Nor did Barstow establish the elements of a statutory necessity defense under the penal code. *See* Tex. Penal Code Ann. § 9.22 (West 2003); *see also Dewalt v. State*, 307 S.W.3d

---

[8] Barstow also relies on dicta in *Vantil* in which the court opined, without citing to any authority, that "we feel, from a criminal perspective, that Vantil's act was a measured response taken to protect his interests as a landowner" and that consent to enter the property, in this case a pickup truck, is "implied where the owner unlawfully places it in a location where it constitutes either a trespass or causes harm to another." 884 S.W.2d at 215. Dicta is not binding on this or any other court. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003); *Hartis v. State*, 183 S.W.3d 793, 798 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In any event, the evidence in this case would support a finding by the trial court that the boulders were not "unlawfully" placed on Barstow's easement and did not constitute a trespass or cause harm to another.

14

437, 454-55 (Tex. App.—Austin 2010, pet. ref'd) (describing elements of necessity defense). We overrule Barstow's first issue.

In his second issue, Barstow asserts, without citing to any authority or referring to anything in the record, that "the information does not allege that Appellant moved too many boulders and does not support a guilty verdict based on moving too many." Barstow provides no further explanation or analysis of this issue, and we find it to be inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Nolan v. State*, 102 S.W.3d 231, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("Conclusory statements which cite no authority present nothing for appellate review.").

To the extent that this issue presents anything for review, Barstow appears to be referring to the trial court's comment at the conclusion of trial that Barstow "went too far" in removing "more than the necessary number of rocks" to gain access to the easement. The trial court's comment has no bearing on whether the State satisfied its burden of proof during trial. The State was required to prove beyond a reasonable doubt that Barstow committed the offense of criminal mischief as alleged in the information. The State did so. The information alleged that Barstow intentionally and knowingly, without the effective consent of the owner, Travis County, tampered with the tangible property of the owner and caused pecuniary loss and substantial inconvenience to the owner in that Barstow "altered the terrain of the Travis County Parks by moving boulders from their intended location." The information tracked the language of the criminal-mischief statute and provided Barstow with sufficient notice of the specific allegations

15

against him.  *See State v. Mays*, 967 S.W.2d 404, 406-07 (Tex. Crim. App. 1998).  The State then went on to prove the allegations at trial, as discussed above.  We overrule Barstow's second issue.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   April 27, 2011

Do Not Publish

16