NUMBER 13-11-00440-CR


# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARCADE JOSEPH COMEAUX JR.,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

**On appeal from the 284th District Court of
Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Memorandum Opinion by Justice Garza**

Appellant, Arcade Joseph Comeaux Jr., was convicted of aggravated kidnapping,

a first-degree felony. *See* TEX. PENAL CODE ANN. § 20.04 (West 2011). The jury, after

finding two enhancement paragraphs to be true and rejecting Comeaux's safe-place-

release defense, sentenced Comeaux to sixty years' imprisonment. Comeaux, pro se,

appeals his conviction by twelve issues. We affirm.

## I. BACKGROUND

Prior to the events giving rise to this case, Comeaux, who had previously been convicted of felony offenses, resided in the Estelle Unit of the Institutional Division of the Texas Department of Criminal Justice ("TDCJ-ID"), in Huntsville, Texas. TDCJ's Chairman of Classification and Records testified that Comeaux was placed in "administrative segregation," otherwise known as solitary confinement, because he was "staff assaultive and disruptive." Comeaux requested a transfer and, because he is disabled and required a wheelchair, he was scheduled to be transferred to the Stiles Unit in Beaumont, Texas, which is the only other TDCJ-ID unit equipped to administratively segregate a wheelchair-bound inmate.

In the early morning of the day of the scheduled transfer, TDCJ officers Lance Waldo and Matt Smith arrived at the Estelle Unit and loaded Comeaux on to a specially-equipped van in order to transport him to the Stiles Unit. During the drive, Comeaux started yelling at the officers and stated that he had a gun. Initially, Waldo did not believe that Comeaux actually had a gun. To prove that he did, Comeaux fired a warning shot into the ceiling of the van. Comeaux then commanded Waldo and Smith not to touch their weapons, and he advised the officers that associates of his were following the van.[1] Comeaux demanded to be driven to Houston, and the officers, fearing for their lives, complied.

At some point, Comeaux directed the officers to park underneath an overpass on Ley Road in Houston. Comeaux ordered the officers to handcuff themselves together,

---

[1] According to Waldo, Comeaux told the officers: "Don't be a hero. Don't be like Ms. Canfield who got shot there at the Wynne Farm, you know, just—just listen to me." Waldo explained that "Ms. Canfield" was a correctional officer who was attacked and killed by two inmates at the TDCJ Wynne Unit.

place their weapons on the ground, and open the van door. Comeaux then exited the van unaided, picked up the officers' weapons, and ordered the officers to lie flat in the back of the van. Comeaux then began to drive away with the officers locked in the back of the van. At one point, Comeaux ordered Waldo to give him his uniform shirt; Waldo complied after Comeaux gave him permission to take the handcuffs off. Comeaux then put the shirt on while driving.

As Comeaux drove the van, he explained to the officers that the high-security unit at Estelle was "very crooked and dirty" and that certain correctional officers had committed crimes. Comeaux explained that he wasn't going to hurt the officers but that he intended to shoot certain guards at the unit. Smith asked Comeaux where he had obtained the gun. According to Waldo's testimony, Comeaux replied: "Oh, I can't tell you that. You know, it might keep somebody else from being able to use it. . . . I've had this gun for a while." Comeaux explained that he was escaping because of the "atrocities" that had occurred at the Estelle Unit. The officers, who had begun to build a rapport with Comeaux, convinced Comeaux that they could help him bring the "crooked" correctional officers to justice. So, Comeaux told them the names of the alleged offending officers and Waldo told Comeaux that he was writing those names down on his hands. In fact, Waldo was writing down locations that the van was passing so that he could keep track of where Comeaux was taking them.

At some point, Comeaux asked the officers: "You're going to think this is funny, but I'm sorry. But do you have any money?" The officers gave Comeaux the $60 that they had in their possession at the time.

After about an hour and twenty minutes on the road, Comeaux told the officers

3

that he needed to "figure out someplace I can put you where you'll be found, but it will give me a little bit of a headstart." Comeaux eventually stopped the van at an abandoned hospital in Baytown, Texas. He ordered Waldo to give him his uniform pants and shoes. He then exited the van, changed clothes and fled, with the officers still lying in a prone position in the back of the locked van. After waiting several minutes to ensure that no associates of Comeaux would see them, the officers got up and looked around. Comeaux was nowhere to be seen. Smith then used a cell phone that he had hidden from view to alert authorities as to what had happened.

Houston police were subsequently able to apprehend Comeaux and place him under arrest. He was later transported to the TDCJ-ID's Clemons Unit, located in Amarillo, Texas. Prior to trial, Comeaux moved to dismiss the indictment on grounds that TDCJ officials at the Clemons Unit questioned him regarding how he obtained the gun without giving him access to counsel. The trial court denied the motion.

At trial, Comeaux denied that he smuggled the gun from the Estelle Unit, as the officers alleged, but stated instead that he found the gun in a "property bag" that was placed next to him in the van. Comeaux testified that, when he saw the property bag,

> I got it and I opened it. When I opened it, I guess you could compare this to walking in your house and having two tons of cocaine in it. You don't know whether to run, you don't know whether to stay, whether to call police because any way you get, it's—you don't see anything what you can do that's going to be feasible ex- —you know, expla- — because it's your property. You back there. . . . I thought, set-up. They fixing to kill me. That's the very first thing that came to my mind, quick. . . . I basically was running on adrenalin and instinct, what to do; and everything just went from one—from whatever happened—I mean, I just went to next phase with no thoughts, no nothing. It just happened as it went.

Comeaux was initially charged with one count of escape, *see id.* § 38.06 (West Supp. 2011), and two counts of aggravated kidnapping. *See id.* § 20.04. The State

4

elected to pursue only the charge alleging aggravated kidnapping with respect to Smith. The jury found Comeaux guilty.[2]  During the punishment phase, the trial court required that Comeaux be kept in restraints, although one arm was left free so that Comeaux could take notes.  The jury sentenced Comeaux to sixty years' imprisonment.  Comeaux filed a motion for new trial which was overruled by operation of law, *see* TEX. R. APP. P. 21.8, and this appeal followed.[3]

Comeaux's court-appointed appellate counsel filed a brief on June 19, 2012, raising two issues challenging the judgment.  The State filed a response brief on July 30, 2012.  Comeaux subsequently filed a pro se motion with this Court asking us to disregard counsel's brief and to appoint new appellate counsel.  We abated the appeal on August 2, 2012 and remanded the cause to the trial court to determine "whether appellant's court-appointed attorney should remain as appellant's counsel; and, if not, whether appellant is entitled to new appointed counsel."  After a telephonic hearing, the trial court found "no adequate reason to discharge" Comeaux's appointed counsel and concluded that Comeaux is "not entitled to appointment of new counsel."  However, the trial court concluded that Comeaux "is entitled to represent himself" on appeal and that he is competent to do so.  The trial court therefore discharged Comeaux's court-appointed appellate counsel and granted his request to proceed pro se on appeal.[4]

---

[2] Comeaux was represented by court-appointed counsel at trial.

[3] This appeal was transferred from the Ninth Court of Appeals to this Court pursuant to a docket equalization order issued by the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[4] Because Comeaux's request to represent himself on appeal was granted by the trial court, and because he is not entitled to hybrid representation, *see, e.g., Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007), we will disregard the brief filed by his court-appointed appellate counsel.

Comeaux filed his handwritten, 107-page pro se brief on January 14, 2013.[5] The State filed a response to Comeaux's pro se brief on April 26, 2013.

## II. DISCUSSION

Comeaux enumerates twelve issues on appeal, which we will address out of order in the interest of clarity. He asks, in his brief, for us to liberally construe his arguments and excuse the "absence of concise legal authorities."[6]

Appellate courts hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Perez v. State*, 261 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988); *see also Roman v. State*, No. 08-11-00057-CR, 2012 Tex. App. LEXIS 8849, at *6–7 (Tex. App.—El Paso Oct. 24, 2012, no pet.) (not designated for publication). We will broadly construe Comeaux's issues in the interest of justice, but we have no duty to make an independent review of the record and applicable law to determine whether the complained-of errors occurred. *See Cavender v. State*, 42 S.W.3d 294, 296 (Tex. App.—Waco 2001, no pet.). We will not make Comeaux's arguments for him, nor will we address any issues that are inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *Roberts v. State*, 273 S.W.3d 322,

---

[5] We granted Comeaux's motion for leave to file an overlength brief. *See* TEX. R. APP. P. 9.4(i)(2)(B) (stating that a non-computer-generated brief filed in an appeal, other than a direct appeal to the Court of Criminal Appeals in a case in which the death penalty has been assessed, must not exceed fifty pages); *see also* TEX. R. APP. P. 2 (permitting us to suspend a rule's operation "to expedite a decision or for other good cause").

[6] Comeaux notes that he previously filed a "Motion Requesting Use of and Access to Lawbooks and Legal Research Material to Draft and File Appeal Brief or In [the] Alternative [to] Appoint Appeal Counsel," which we denied on November 1, 2012. We stated in our order denying the motion that we do not have jurisdiction to grant these requests because, even if we had construed Comeaux's motion as a petition for an extraordinary writ, we may only issue such a writ against a judge of a district or county court in the court of appeals district or if necessary to enforce our jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.221 (West 2004).

326 (Tex. Crim. App. 2008) (agreeing with court of appeals that inadequately briefed complaint by pro se appellant was properly overruled).

## A.    Safe-Place-Release Defense

Comeaux contends by his sixth issue that the evidence was insufficient to support the jury's finding that he did not voluntarily release Smith in a safe place.[7]  *See* TEX. PENAL CODE ANN. § 20.04(d).

At the punishment stage of a trial, the defendant in an aggravated kidnapping case may raise the issue as to whether he voluntarily released the victim in a safe place.  *Id.*  If the defendant proves that issue in the affirmative by a preponderance of the evidence, the offense, normally a first-degree felony, is instead a second-degree felony.  *See id.* § 20.04(c), (d).  To constitute a voluntary release, "the release must have occurred in a place and manner which realistically conveyed [to the complainant] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available."  *Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also Gonzales v. State*, No. 13-09-00287-CR, 2010 Tex. App. LEXIS 9982, at *15 (Tex. App.—Corpus Christi Dec. 16, 2010, no pet.) (mem. op., not designated for publication).

A defendant's challenge to the sufficiency of the evidence supporting a finding on an issue for which the defendant had the burden of proof, such as the safe-place-

---

[7] Comeaux asserts generally in his sixth issue that the evidence was insufficient to support the verdict.  However, his argument pertains only to the sufficiency of the evidence supporting the jury's negative finding on the safe-place-release defense.  Accordingly, other than evaluating the evidence supporting that affirmative defense, we do not address the issue of whether the evidence was sufficient to support a finding of guilt because that issue was not adequately briefed.  *See* TEX. R. APP. P. 38.1(i).

release defense, may be made on legal or factual sufficiency grounds. *Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013).[8] In evaluating whether there is legally insufficient evidence to support such a finding, we first search the record for evidence favorable to the finding, disregarding all contrary evidence unless a reasonable fact-finder could not. *Id.* at 669. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.* In evaluating factual sufficiency, we consider the entire body of evidence to determine whether the finding on the affirmative defense was so "against the great weight and preponderance" of that evidence as to be manifestly unjust. *Id.* at 671.

At the punishment phase of trial, the trial court granted the State's motion to re-admit all of the evidence that was adduced at the guilt-innocence phase. That evidence included testimony by the abducted officers that Comeaux did not in fact "release" them, but rather fled on foot after locking the officers in the back of the transport van that Comeaux had commandeered. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 987 (10th ed.) (defining "release" as, *inter alia*, "to set free from restraint, confinement, or servitude"). Even if the jury believed that Comeaux did not intend to harm the officers, it was free to accept the officers' testimony and to conclude that Comeaux did not voluntarily release them in a safe place. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) ("[The finder of fact] is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has

---

[8] "The [*Jackson v. Virginia*] constitutional standard of review applies to the elements of an offense that the State must prove beyond a reasonable doubt, but it does not apply to elements of an affirmative defense that the defendant must prove by a preponderance of the evidence." *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 924 n.67 (Tex. Crim. App. 2010) (Cochran, J., concurring) (noting that the Court of Criminal Appeals had "properly adopted the Texas civil standards of legal and factual sufficiency for those few instances in criminal cases in which the burden of proof is a preponderance of the evidence, as occurs with affirmative defenses")).

8

the opportunity to observe the witness's demeanor and appearance."). The evidence was legally and factually sufficient to support the jury's finding. Comeaux's sixth issue is overruled.

**B.    Jury Charge Error**

By his eighth issue, Comeaux argues that the trial court erred by submitting a jury charge that defined the charged offense as a first-degree felony, rather than as a second-degree felony under the safe-place-release provision of subsection 20.04(d).[9]

Comeaux's trial counsel did not object to the jury charge on this basis. Therefore, even assuming that there was error in the change, it is reversible error only if Comeaux shows that it caused him to suffer "egregious harm." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *see Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) (noting that "egregious harm" will be found only if the error deprived the defendant of a fair and impartial trial—that is, if it affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory). Comeaux has not established that he suffered any harm, let alone egregious harm, as a result of this alleged error.[10] Accordingly, his eighth issue is overruled.

---

[9] By his fourth issue, Comeaux contends that the trial court erred "in its interpretation of [penal code subsection 20.04(d)] and how it was applied" to his case. He appears to argue by that issue that the jury charge was erroneous because: (1) it instructed the jury that it could only consider prior bad acts if the evidence showed beyond a reasonable doubt that Comeaux committed those acts; (2) it did not indicate that the safe-place-release defense, if proven, entitles Comeaux to a reduction in the degree of the offense, not just a reduction in the range of punishment; and (3) it did not state that, if the jury found that Comeaux had established his safe-place-release defense, his punishment would be limited to that for a second-degree felony despite the jury's findings on the enhancement paragraphs. Comeaux has not supported any of these arguments with references to the record or to legal authority. Accordingly, his fourth issue is waived as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

[10] The State notes correctly that the punishment range for a second-degree felony enhanced by two prior felony convictions is the same as the punishment range for a first-degree felony enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42(d); *see also Young v. State*, No. 02-08-

9

## C. Constitutional Issues

Comeaux raises various constitutional objections to his conviction. By his first issue, he argues that the State, after electing to proceed on only one count of aggravated kidnapping, should not have been permitted to offer same-transaction contextual evidence. That is, he contends that, because the State only proceeded on the kidnapping count related to Smith, evidence of Waldo's kidnapping was irrelevant and its admission deprived him of his constitutional right to a fair trial. "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, same-transaction contextual evidence is admissible where "events and circumstances . . . are intertwined, inseparable parts of an event that, if viewed in isolation, would make no sense at all." *Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007) (noting that "[w]hen evidence is admitted on this basis, Rule 404(b) is not implicated and the defendant is not entitled to any limiting instruction concerning the use of that evidence"). Here, it would not have been possible to present evidence of Comeaux's actions with regard to Smith without also presenting evidence of his actions as to Waldo because the two kidnappings were intertwined and inseparable. The evidence was admissible; therefore, its admission did not violate Comeaux's constitutional rights.[11]

By his third issue, Comeaux contends that penal code subsection 20.04(d) is unconstitutionally vague, resulting in a violation of his right to a fair trial. In particular,

---

00312-CR, 2009 Tex. App. LEXIS 9651, at *22 (Tex. App.—Fort Worth Dec. 17, 2009, pet. ref'd) (mem. op., not designated for publication). Accordingly, even if the jury had found in favor of Comeaux on the safe-place-release issue, he would still have been subject to the same punishment range.

[11] Comeaux appears to argue by his second issue that the prosecutor committed misconduct by eliciting testimony regarding Waldo's kidnapping. Because the testimony was admissible, Comeaux's second issue is meritless, and we overrule it.

10

Comeaux appears to complain that the statute: (1) does not define "safe place"; (2) does not define "preponderance of the evidence"; (3) does not specify whether it results in a "reduction in punishment" or "a reduction in both offense and punishment"; and (4) does not contain "guidelines as to when it is to be considered and applied." "Laws cannot be vague or arbitrary; they must inform a person of ordinary intelligence of what is prohibited by the law so that he may act accordingly and must provide explicit standards to those who enforce them." *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012). However, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Id.* (citing *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 (1982)). Here, the evidence established that Comeaux took two correctional officers hostage at gunpoint, drove them around the greater Houston area, then fled on foot after locking the officers in the back of the vehicle. Comeaux has not suggested any plausible interpretation of section 20.04(d) under which his actions, as established by the trial testimony, would qualify as a "voluntarily release . . . in a safe place." *See* TEX. PENAL CODE ANN. § 20.04(d). Therefore, he cannot complain about the vagueness of the law. *See Watson*, 369 S.W.3d at 870. His third issue is overruled.

By his fifth issue, Comeaux argues that the trial court erred in denying his motion to dismiss on the basis that he had been denied his Sixth Amendment right to counsel. In particular, Comeaux complains that recordings were made of conversations between him and his attorneys and that he was subjected to interrogation by prison officials

11

without benefit of counsel.[12]  A trial court may dismiss a charging instrument to remedy a constitutional violation, but dismissal is "a drastic measure only to be used in the most extraordinary circumstances." *State v. Mungia*, 119 S.W.3d 814, 817 (Tex. Crim. App. 2003).  "[W]here there is no constitutional violation, or where the [accused]'s rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the charging instrument without the consent of the State." *Id.*  Here, Comeaux contends that, although his attorneys were able to meet with him in prison, they were not able to "conduct a meaningful interview" because the meeting was recorded.  However, even assuming that the recordings were unconstitutionally obtained, Comeaux does not explain why dismissal of the case against him was "necessary to neutralize the taint of the unconstitutional action." *See id.*  Therefore, the trial court did not err by declining to dismiss the case on this basis.

By his seventh issue, Comeaux argues that his constitutional rights were violated when the trial court denied his request not to be shackled in front of the jury during the punishment phase.  The United States Supreme Court has held that the appearance of a defendant in shackles before a jury during a trial can violate the defendant's Fifth and Fourteenth Amendment rights to due process.  *Deck v. Missouri*, 544 U.S. 622, 629–34 (2005).  The Court reasoned that "visible shackling undermines the presumption of innocence and related fairness of the factfinding process[,] . . . can interfere with the accused's ability to communicate with his lawyer" and "participate in his own defense," and "affronts the dignity and decorum of judicial proceedings that the judge is seeking to

---

[12] The recordings which Comeaux refers to were apparently destroyed.  They were not offered into evidence at trial.

uphold." *Id.* at 630–31 (internal quotations and alterations omitted). "[A]ll efforts should be maintained to prevent the jury from seeing the defendant in shackles, except where there has been a showing of exceptional circumstances or a manifest need for such restraint." *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). It is within the discretion of the trial judge as to whether a defendant shall be tried in handcuffs or shackles, and we review the trial court's decision for abuse of that discretion. *Id.* (noting that "the record must clearly and affirmatively reflect the trial judge's reasons therefor").

Here, prior to the sentencing phase, defense counsel noted that Comeaux was shackled with "leg cuffs" and a cuff on his left wrist attached to a "belly chain," but that his right hand was left free to take notes. Defense counsel then asked for those restraints to be removed. The trial court noted that Comeaux was seated in a wheelchair and behind a solid desk, so the jurors would not be able to see the leg cuffs. With respect to the wrist cuff, the trial court first noted that Comeaux voluntarily chose to be tried while wearing his white prison jumpsuit. The trial court stated:

> [T]his inmate asked to be tried during this entire case in his prison white garb. I would never have, you know, wanted that to happen. Always would have gotten outside clothes for the defendant. Never would have been tried in that white. But this defendant specifically asked upon the advice of his attorneys that he be tried that way. So, there has been a certain image of this defendant, I think, as far as someone who is incarcerated, besides the abundance of evidence.

The trial court then asked the bailiff whether it would be safe to allow Comeaux to undo the chain on his left wrist. The bailiff replied:

> Judge, the only thing I can stress to you is the Sheriff Department's policy is that he has been convicted. He is in our custody. It is the policy of the Sheriff's Office for him to be restrained. At your orders, we released one hand so that he can take notes during the punishment phase.

13

The trial court, after hearing this statement and noting that Comeaux's "sleeve pretty well covers [the] chain on the left wrist," denied defense counsel's motion to have the restraints removed.

The State notes correctly that, in these circumstances, two of the three rationales expressed by the United States Supreme Court for why visible shackling is disfavored—i.e., undermining the presumption of innocence and impairing the accused's ability to communicate with counsel, *see Deck*, 544 U.S. at 629–34—are not applicable because Comeaux had already been convicted of the charged offense and he was able to communicate in writing to his attorneys.[13] Moreover, as noted, Comeaux had already voluntarily participated in the entire trial while wearing a prison uniform; and, the trial court stated that Comeaux's shirt sleeve "pretty much cover[ed]" the wrist chain. In light of these facts, we cannot say that the trial court abused its discretion in denying Comeaux's motion.

We overrule Comeaux's first, third, fifth, and seventh issues.

## D.    Admission of Evidence

By his eleventh issue, Comeaux contends that the trial court erred by admitting evidence that had been "altered" by TDCJ officials. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (internal citations omitted). "If the trial

_____

[13] The State further argues that any error in denying Comeaux's motion was harmless because there is no evidence in the record indicating that any juror saw or was aware of his shackles. *See Canales v. State*, 98 S.W.3d 690, 697–98 (Tex. Crim. App. 2003) (finding no reversible error where "[n]othing in the record indicates that the jury ever saw or heard or was otherwise aware that appellant was wearing shackles"). It is true that there is no evidence, strictly speaking, that any juror observed the shackles; however, defense counsel asserted as part of his argument that Comeaux "was spotted in restraints outside the courtroom by members of the jury." We need not perform a harm analysis because, as we will conclude herein, the trial court did not abuse its discretion in denying Comeaux's motion. *See* TEX. R. APP. P. 47.1.

14

court's decision was within the bounds of reasonable disagreement, the appellate court should not disturb its ruling." *Id.* Comeaux contends specifically that a video recording entered into evidence during the State's examination of a corrections officer was "altered" to change Comeaux's appearance to make him appear able-bodied. Comeaux does not direct this Court to any evidence in the record, however, suggesting that his allegations of evidence tampering have any merit. In the absence of any evidence substantiating Comeaux's claim, we cannot say that the trial court abused its discretion in admitting the evidence.

Comeaux's twelfth issue on appeal contends that the trial court erred by admitting the testimony of Texas Ranger Jason Taylor. Comeaux argues that Taylor's testimony violated his Sixth Amendment right to counsel because Taylor discussed a conversation he had with Comeaux in prison without the presence of an attorney, despite the fact that an attorney had already been appointed to Comeaux. The record reflects that the trial court held a hearing on Comeaux's motion to suppress Taylor's testimony. At the hearing, Taylor testified that he was not made aware that Comeaux was represented by counsel at the time he spoke to him. He agreed with the prosecutor that "many of your conversations with [Comeaux] began with him just talking to you before you could even get Miranda out"[14] and that Comeaux spoke "completely voluntarily." Comeaux's trial counsel argued that, even though the statements were made voluntarily, his court-appointed trial counsel should have been consulted before he was permitted to waive his right to counsel. The trial court denied the motion.

---

[14] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

In *Montejo v. Louisiana*, 556 U.S. 778 (2009), the United States Supreme Court held that "[t]he defendant may waive the right [to counsel] whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* at 786. The Court stated: "No reason exists to assume that a defendant like Montejo, who has done *nothing at all* to express his intentions with respect to his Sixth Amendment rights, would not be perfectly amenable to speaking with the police without having counsel present." *Id.* at 789 (emphasis in original).[15] Comeaux, like the appellant in *Montejo*, did nothing to invoke his Sixth Amendment rights prior to speaking to Taylor. Moreover, Comeaux does not point to any evidence in the record, and we find none, establishing that his statements to Taylor were made involuntarily. We conclude that the trial court did not abuse its discretion by overruling Comeaux's motion to suppress.

Comeaux's eleventh and twelfth issues are overruled.

### E.     Motion for New Trial

By his ninth issue, Comeaux contends that the trial court erred in denying his motion for new trial. However, the only grounds raised in the motion for new trial are that "[t]he verdict in this cause is contrary to the law and evidence." We have already determined that the evidence was sufficient to support the jury's finding that Comeaux did not voluntarily release Waldo and Smith in a safe place. *See* TEX. PENAL CODE ANN. § 20.04(d). Having reviewed the trial record, we also conclude that the evidence—including the officers' unequivocal testimony that Comeaux took them hostage using a

---

[15] The *Montejo* Court overruled prior case law which established a presumption that a waiver of the right to counsel is invalid if counsel has already been appointed. *Montejo v. Louisiana*, 556 U.S. 778, 797 (2009) (overruling *Michigan v. Jackson*, 475 U.S. 625 (1986) because, "when the marginal benefits of the *Jackson* rule are weighed against its substantial costs to the truth-seeking process and the criminal justice system, we readily conclude that the rule does not 'pay its way'").

handgun—was sufficient to support the jury's finding that Comeaux was guilty of aggravated kidnapping. *See id.* § 20.04(a) (defining aggravated kidnapping as, *inter alia*, "intentionally or knowingly abduct[ing] another person and us[ing] or exhibit[ing] a deadly weapon during the commission of the offense").[16] Accordingly, the trial court did not err in rejecting Comeaux's claim that the verdict was "contrary to the law and evidence." His ninth issue is overruled.[17]

## F.    Appointment of New Counsel

Finally, Comeaux argues by his tenth issue that the trial court erred by (1) failing to appoint new counsel to represent him during the hearing on his motion to dismiss appellate counsel, and (2) failing to appoint new appellate counsel.

As we explained in our order dated August 2, 2012, a defendant does not have the right to choose his own appointed counsel. Unless he waives his right to counsel and elects to proceed pro se, or otherwise shows adequate reason for the appointment of new counsel, he is not entitled to discharge his counsel but must accept the counsel appointed by the trial court. *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977). Adequate reason for the discharge of counsel and appointment of new counsel rests within the sound discretion of the trial court. *Carroll v. State*, 176 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Furthermore, the trial court is under no

---

[16] "Abduct" means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2) (West 2011). "Restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). When the victim is over 17 years of age, as here, restraint is considered "without consent" if it is accomplished by "force, intimidation, or deception." *Id.* § 20.01(1)(A).

[17] Comeaux also appears to contend by his ninth issue that his trial counsel provided ineffective assistance. However, he does not provide any citations to the record or to legal authority in support of this argument. Therefore, to the extent Comeaux raises the issue of ineffective assistance of trial counsel, that issue is waived as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

17

duty to search until it finds an attorney acceptable to an indigent defendant. *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); *see Camacho v. State*, 65 S.W.3d 107, 109 (Tex. App.—Amarillo 2000, no pet.). As we previously held in our order dated November 1, 2012, the trial court did not abuse its discretion in denying Comeaux's request for appointment of new counsel.

We overrule Comeaux's tenth issue.

### III. CONCLUSION

Having overruled Comeaux's twelve issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of June, 2013.